**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**Nauman A. ALY, Defendant.**

**16 Civ. 3853 (PGG) (GWG)**

United States District Court, S.D. New York.

Signed March 1, 2017

Julia Claire Green, David Lawrence Axelrod, David W. Snyder, U.S. Securities and Exchange Commission, Philadelphia, PA, for Plaintiff.

Nauman A. Aly, Karachi Sindh, Pakistan, pro se.

## MEMORANDUM ORDER

GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE

Defendant Nauman A. Aly moves for a protective order requiring that his deposition take place in Karachi, Pakistan, the city where he resides, either in person or by videoconference.[1] For the following reasons, the Court grants Aly's motion to have his deposition taken by videoconference.

[1.] See Motion for Protective Order, filed Dec. 23, 2016 (Docket # 38); Declaration of Nauman A. Aly, filed Dec. 23, 2016 (Docket # 39) ("Aly Decl."); Plaintiff Securities and Exchange Commission's Memorandum of Law in Opposition to Defendant's Motion for a Protective Order, filed

## BACKGROUND

Aly is a Pakistani citizen who lives in Karachi, Pakistan. See Aly Decl. ¶ 1. The Commission's complaint charges that statements in certain Schedule 13D filings made by Aly were false and misleading and that he violated Securities Act section 17(a), 15 U.S.C. § 77q(a), Exchange Act section 10(b), 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5. See Complaint, filed May 24, 2016 (Docket # 1), ¶¶ 44–51.

The same day it filed its complaint, the Commission moved for a temporary restraining order freezing assets in Aly's civil brokerage account. See Plaintiff's Notice of Motion for a Temporary Restraining Order Freezing Assets and Granting Other Equitable Relief and for an Order to Show Cause why a Preliminary Injunction Should not be Issued, dated May 24, 2016 (Docket # 4). The Court granted this motion, see Temporary Restraining Order Freezing Assets and Granting Other Relief and Order to Show Cause, filed May 24, 2016 (Docket # 3), and Aly's brokerage account remains frozen, see Stipulation and Preliminary Injunction Order, filed Sept. 15, 2016 (Docket # 25). Aly states under oath that he currently has "liquid assets of approximately $500, total assets of approximately $1000, and a negative net worth of approximately $65,000." Aly Decl. ¶ 3.

In December, the Commission noticed Aly's deposition for January 9, 2017, at the Commission's offices in New York, New York. See Notice of Deposition of Nauman A. Aly, dated Dec. 2, 2016 (attached as Ex. A to Aly Decl.); Email from Julia C. Green, dated Dec. 2, 2016 (attached as Ex. G to Green Decl.). Aly responded that he "do[es] not have the financial means to travel out of Karachi," that he would agree to a deposition in person or by video in Karachi, and that he would need an English/Urdu interpreter. Emails Between Nauman A. Aly and Julia C. Green (attached as Ex. G to Green Decl.).

Jan. 6, 2017 (Docket # 42) ("Comm'n Mem."); Declaration of Julia C. Green, filed Jan. 6, 2017 (Docket # 43) ("Green Decl."); Defendant's Reply to Response to Motion for Protective Order, filed Jan. 9, 2017 (Docket # 44) ("Def. Reply").

**118**

DISCUSSION

 While "the party noticing [a] deposition usually has the right to choose the location," Buzzeo v. Bd. of Educ., 178 F.R.D. 390, 392 (E.D.N.Y. 1998) (internal quotation marks omitted) (quoting 7 Moore's Federal Practice—Civil § 30.20(1)(b)(ii)), there is a rebuttable presumption that, absent special circumstances, the deposition of a defendant will be held where the defendant resides, see, e.g., Glatt v. Fox Searchlight Pictures Inc., 2012 WL 2108220, at *4 (S.D.N.Y. June 11, 2012); Estate of Gerasimenko v. Cape Wind Trading Co., 272 F.R.D. 385, 390 (S.D.N.Y. 2011). When the parties cannot agree on a location, "courts retain substantial discretion to determine the site of a deposition." Lewis v. Madej, 2016 WL 590236, at *3 (S.D.N.Y. Feb. 11, 2016) (internal quotation marks omitted) (quoting Robert Smalls Inc. v. Hamilton, 2010 WL 2541177, at *1 (S.D.N.Y. June 10, 2010)). Factors guiding the Court's discretion include the cost, convenience, and litigation efficiency of the designated location. Buzzeo, 178 F.R.D. at 393; accord Sloniger v. Deja, 2010 WL 5343184, at *5 (W.D.N.Y. Dec. 20, 2010). The safety of the proposed venue may also be considered. See Doe v. Karadzic, 1997 WL 45515, at *4 (S.D.N.Y. Feb. 4, 1997); see also United States v. $160,066.98 from Bank of Am., 202 F.R.D. 624, 628–29 (S.D. Cal. 2001) (considering safety risk of travel to Pakistan to take party deposition as "special circumstances"). Federal Rule of Civil Procedure 30(b)(4) permits the Court to order "that a deposition be taken by telephone or other remote means," including by videoconference. See, e.g., Usov v. Lazar, 2015 WL 5052497, at *1 (S.D.N.Y. Aug. 25, 2015); RP Family, Inc. v. Commonwealth Land Title Ins. Co., 2011 WL 6020154, at *3–*4 (E.D.N.Y. Nov. 30, 2011).

 The presumption that a deposition should take place where a defendant resides is based in part on the assumption that the plaintiff exercised choice as to the forum of the lawsuit, and thus the presumption is weakest where the plaintiff was constrained to file suit in a particular forum. See Mill–Run Tours, Inc. v. Khashoggi, 124 F.R.D. 547, 550 (S.D.N.Y. 1989); accord Ambac Assurance Corp. v. Adelanto Pub. Util. Auth., 2012 WL 1589597, at *6 (S.D.N.Y. May 7, 2012); Ristevski v. S & P Carrier, Ltd., 2010 WL 1687878, at *2 (N.D. Ill. Apr. 26, 2010). Here, the Commission did not have the option of bringing these federal securities claims in Pakistan. See In re Livent, Inc. Sec. Litig., 2002 WL 31366416, at *1 (S.D.N.Y. Oct. 21, 2002) ("Plaintiffs' choice of forum was effectively constrained insofar as the Canadian judiciary was unavailable to them as a forum for these claims," due to exclusive jurisdiction of U.S. federal courts over claims under the Securities Act and Exchange Act). Thus, we will not accord Aly the benefit of the presumption and will instead turn to the factors that guide a court's discretion in resolving disputes over the locations of depositions.

In this case, the paramount factor that suggests the deposition should not take place in Pakistan is the issue of safety. The State Department has warned "U.S. citizens against all non-essential travel to Pakistan" based on significant safety concerns, including the targeting of U.S. citizens by foreign and indigenous terrorist groups in Pakistan. See Pakistan Travel Warning, U.S. Department of State, dated Oct. 7, 2016 (attached as Ex. H to Green Decl.) ("Pakistan Travel Warning").[2] Accordingly, we find that travel by Commission attorneys to Karachi for the purpose of this deposition would pose a significant and unjustified risk to their safety. See $160,066.98 from Bank of Am., 202 F.R.D. at 628 & n.3 (State Department travel warning against travel to Pakistan showed too great a risk to require government travel there for deposition).

 That being said, the Court does not believe that requiring Aly to travel to New York or another country for his deposition is appropriately ordered at this stage of the proceedings. On the issue of cost, Aly has

---

**2.** According to the State Department travel warning, U.S. government personnel may not stay overnight at hotels in Pakistan. Pakistan Travel Warning. Counsel for the Commission attests that overnight rooms at the U.S. Consulate in Karachi—one alternative to staying in a hotel—have severely limited availability, with "no rooms available ... for the past four months." Green Decl. ¶ 11.

declared under penalty of perjury that he has assets only of approximately $1,000. Aly Decl. ¶ 3. Given these resources, travel costs alone would prove a prohibitive burden to him. While the Commission argues that Aly's claims are not credible, Comm'n Mem. at 10–11, they provide no evidence to refute his sworn statements concerning his financial state. The case they cite, Stephens v. 1199 SEIU, 2011 WL 2940490 (E.D.N.Y. July 19, 2011), involved an entirely different situation. In Stephens, the moving party was the plaintiff, who had failed to sufficiently detail her financial situation other than stating she was destitute. Id. at *2. Aly, the defendant in this case, specifically describes his available assets in a sworn affidavit under penalty of perjury. Aly Decl. ¶ 3.[3] Moreover, Aly's passport has expired and he has no visa to enter the United States. Id.; Passport of Nauman A. Aly, expired Apr. 30, 2016 (attached as Ex. A to Green Decl.). The Court thus believes that forcing Aly to travel to New York or to another country for his deposition would place an undue burden on him.[4]

■ This potential burden on travel to each side plainly points to holding the deposition by videoconference. This is frequently a preferred solution to mitigate the burden of a deposition location inconvenient to one or both sides. See, e.g., United States v. One Gulfstream G–V Jet Aircraft Displaying Tail No. VPCES, 304 F.R.D. 10, 17–18 (D.D.C. 2014) ("Ample case law recognizes that a videoconference deposition can be an adequate substitute for an in-person deposition, particularly when significant expenses are at issue or when the deposition will cover a limited set of topics.") (collecting cases); Zakre v. Norddeutsche Landesbank Girozentrale, 2003 WL 22208364, at *2 (S.D.N.Y. Sept. 23, 2003) (allowing deposition in Germany to avoid hardship to witness, but re-

quiring deposition by videoconference, "recognizing the cost and inconvenience to [plaintiff's] counsel" of traveling to Germany).

The Commission argues that deposition by video conference would be logistically and technically difficult and "would deprive the Commission of the opportunity to adequately evaluate the credibility of defendant." Comm'n Mem. at 8. We reject the latter argument. As one court has noted, "modern videoconference technology [allows] the Government to observe [the deponent] and ask follow up questions as is necessary to obtain the relevant testimony." G–V Jet Aircraft, 304 F.R.D. at 18. For this reason, "[p]arties routinely conduct depositions via videoconference, and courts encourage the same, because doing so minimizes travel costs and permits the jury to make credibility evaluations not available when a transcript is read by another." Gee v. Suntrust Mortg., Inc., 2011 WL 5597124, at *2 (N.D. Cal. Nov. 15, 2011) (citations and internal quotation marks omitted); accord Forauer v. Vt. Country Store, Inc., 2014 WL 2612044, at *7 (D. Vt. June 11, 2014); G–V Jet Aircraft, 304 F.R.D. at 18; Shockey v. Huhtamaki, Inc., 280 F.R.D. 598, 602 (D. Kan. 2012).

As for the claimed technical and logistical challenges, the Commission has not adequately supported its assertion that a deposition by videoconference is infeasible. First, while the Commission claims that the difficulty of "coordination of document review" is one reason why a video deposition would be inappropriate, see Comm'n Mem. at 9, such issues are regularly satisfied by exchanging the documents in advance, see, e.g., Catipovic v. Turley, 2013 WL 1718061, at *10 (N.D. Iowa Apr. 19, 2013) (relevant documents could be sent to deponent in Hungary by email, fax, or parcel service, then placed in

---

**3.** Aly's discovery responses provide more detail of his financial situation than his declaration, including his bank account numbers, and contain an offer to allow the Commission to access his accounts. See Supplemental Discovery Response, dated Dec. 9, 2016 (attached as Ex. D. to Green Decl.).

**4.** The Commission argues that Aly is required to appear in New York, either for a pretrial conference, as part of the civil case management plan's

face-to-face requirement for settlement, or for trial. See Comm'n Mem. at 11–12. These arguments, however, do not address the appropriate location of a deposition. Moreover, we note that Court-imposed requirements may be modified for good cause. See Civil Case Management Plan and Scheduling Order, filed Nov. 21, 2016 (Docket # 35), at 3. Whether Aly will be required to appear for trial need not be addressed at this time.

front of deponent by a "qualified person"); Connell v. City of New York, 230 F.Supp.2d 432, 437 (S.D.N.Y. 2002) ("All documents should be pre-marked and sent to plaintiff in advance of the deposition date. This will reduce any difficulty in identifying documents during the deposition."); 7 Moore's Federal Practice § 30.20(1)(b)(ii) (3d ed. 2016), at 30–44—30-45. In this case, Aly is able to receive documents by email, reducing to essentially zero the cost of providing the documents in advance.

Second, while the Commission claims that "video teleconference connections to Karachi are unreliable," see Green Decl. ¶ 11, they offer no detail, and do not explain why this difficulty would prove so burdensome that requiring Aly's travel to the Untied States is a necessary solution. The case they cite in support of this notion, United States v. Khan, 794 F.3d 1288 (11th Cir. 2015), specifically stated that the video conferencing technology in Pakistan worked "for all of a day" and that the interruption the next day caused problems because it happened in the middle of a criminal trial. Id. at 1309. This does not show that such connections are not available, and the Commission has not provided information from the U.S. Consulate (which, according to Aly, regularly holds video depositions, Def. Reply at 2–3) or from any person with personal knowledge of the availability of video-conferencing to Pakistan.

Finally, the Commission argues that the 10–hour time difference between New York and Karachi would force the Commission to conduct the deposition "in the middle of the night (Eastern Standard Time)." Comm'n Mem. at 9. There may be solutions to this problem as well—for example, holding the deposition in two- to four-hour blocks in the 5:00 p.m. to 9:00 p.m. time range, Karachi time. As for the Commission's claim that a deposition at this time would preclude court intervention, it is quite rare for the parties to require court rulings in the middle of depositions. There is no basis to believe that the deposition in this case is so likely to require judicial intervention that deposition by video-conference would prove fruitless. In any event, the Court will make itself available during these hours should it prove necessary.

## CONCLUSION

For the foregoing reasons, the motion for a protective order (Docket # 38) is granted. Any deposition of Aly shall be conducted by videoconference. The deposition shall take place within the next 21 days.

SO ORDERED.