19-2213-cv
*Rodriguez v. Gusman*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2020

(Argued: August 17, 2020                    Decided: August 31, 2020)

Docket No. 19-2213-cv

_____

JOSE RODRIGUEZ,

*Plaintiff-Appellant*,

v.

DR. MIKAIL A. GUSMAN, MEDICAL DIRECTOR, EASTERN CORRECTIONAL
FACILITY, FKA DR. GUZMAN, FKA DR. GUSMAN, NANCY ANTHONY,
REGISTERED NURSE, EASTERN CORRECTIONAL FACILITY, FKA MS.
ANTHONY, DR. ANN ANDOLA, REGISTERED NURSE, EASTERN
CORRECTIONAL FACILITY, FKA MS. ANNDOLA, FKA DOCTOR
ANANDOLAS, JEFFREY MCKOY, DR. BIPIN BHAVSAR, EASTERN
CORRECTIONAL FACILITY, MEGAN MCGLYNN, ROGER TRAYNOR,
DAVID JACOBS, AMANDA DEMSHICK,

*Defendants-Appellees*.[1]

_____

Before: NEWMAN, POOLER, and HALL, *Circuit Judges*.

---

[1] The Clerk of Court is directed to amend the caption as above.

Jose Rodriguez appeals from the June 21, 2019 decision and order of the United States District Court for the Northern District of New York (Mae A. D'Agostino, *J.*) adopting the Magistrate Judge's sua sponte order administratively closing Rodriguez's civil rights suit against defendants and denying Rodriguez's motion to reconsider. The district court concluded that, because Rodriguez had been deported to the Dominican Republic, Rodriguez would be unavailable in the United States for depositions, further medical examinations, and trial testimony, and the case should be closed. Our Circuit has yet to address what standard guides administrative-closure decisions when a plaintiff is unavailable. We hold that an administrative closure in such circumstances is a last resort that is appropriate only when all other alternatives are virtually impossible or so impractical as to significantly interfere with the operations of the district court or impose an unreasonable burden on the party opposing the plaintiff's claim. On the present record, numerous alternatives to the issues identified by the district court exist, and none appears to meet the above-articulated standard. We accordingly vacate the district court's order and remand for further proceedings consistent with this opinion.

VACATED and REMANDED.

_____

ROBERT J. O'LOUGHLIN, Paul, Weiss, Rifkind, Wharton & Garrison LLP (Karen King, Ayelet M. Evrony, Amanda B. Horowitz, *on the brief*), New York, N.Y., *for Plaintiff-Appellant Jose Rodriguez.*

FRANK BRADY, Assistant Solicitor General (Jeffrey W. Lang, Deputy Solicitor General, *on the brief*), *for* Letitia James, Attorney General of the State of New York, New York, N.Y., *for Defendant-Appellees.*

POOLER, *Circuit Judge*:

Jose Rodriguez appeals from the June 21, 2019 decision and order of the United States District Court for the Northern District of New York (Mae A. D'Agostino, *J.*) adopting the Magistrate Judge's sua sponte order administratively closing Rodriguez's civil rights suit against defendants[2] and

_____

[2] The defendants in this case are Dr. Mikail A. Gusman, the Medical Director of New York's Eastern Correctional Facility ("ECF"); Nancy Anthony, a registered nurse at ECF; Dr. Ann Andola, a doctor at ECF; Jeffrey McKoy, the Deputy Commissioner of Program Services at ECF; Dr. Bipin Bhavsar, a doctor at ECF; Megan McGlynn, a Department of Corrections and Community Supervision Inmate Classification Analyst; Roger Traynor, the Supervising Rehabilitation Coordinator at Franklin Correctional Facility; David Jacobs, a Rehabilitation Counselor at Franklin Correctional Facility; and Amanda Demshick, the Offender Rehabilitation Coordinator at the Shawangunk Correctional Facility (collectively, "Defendants").

3

denying Rodriguez's motion to reconsider. The district court concluded that, because Rodriguez had been deported to the Dominican Republic, Rodriguez would be unavailable in the United States for depositions, further medical examinations, and trial testimony, and the case should be closed. Our Circuit has yet to address what standard guides administrative-closure decisions when a plaintiff is unavailable. We hold that an administrative closure in such circumstances is a last resort that is appropriate only when other all alternatives are virtually impossible or so impractical as to significantly interfere with the operations of the district court or impose an unreasonable burden on the party opposing the plaintiff's claim. On the present record, numerous alternatives to the issues identified by the district court exist, and none appears to meet the above-articulated standard. We accordingly vacate the district court's order and remand for further proceedings consistent with this opinion.

## BACKGROUND

Rodriguez is a former lawful permanent resident of the United States who currently lives in the Dominican Republic. The present suit arises out of an incident that occurred while Rodriguez was incarcerated at New York's Eastern Correctional Facility ("Eastern"). In 2011, Rodriguez began suffering from a

4

rapid heart rate and irregular breathing. On February 16, 2012, Rodriguez ultimately had a stroke, which left him partially paralyzed. He alleges that Defendants' deliberate indifference to his medical needs while he was incarcerated at Eastern led to his stroke. As relevant here, Rodriguez alleges that Defendants failed to respond to his complaints about his symptoms over several months; did not consult his medical doctors or provide a Spanish interpreter; did not prescribe any medication; did not adequately monitor his condition; and minimized his complaints, such as when on one occasion, defendant Dr. Bipin Bhavsar merely instructed him to meditate.

On May 19, 2015, Rodriguez filed suit, proceeding as a pro se prisoner. Initially, Rodriguez raised only an Eighth Amendment deliberate-indifference claim. Acting sua sponte, the district court dismissed Rodriguez's complaint with prejudice as time barred. After appointing pro bono counsel, this Court vacated and remanded, holding that the district court erred in failing to provide Rodriguez an opportunity to amend. *Rodriguez v. Griffin*, 672 F. App'x 106 (2d Cir. 2016).

Pro bono counsel continued to represent Rodriguez, and he subsequently amended his complaint and added claims of First Amendment retaliation and

5

access to the courts. In the amended complaint, Rodriguez alleges that after he filed the above-mentioned appeal, he was, without justification, transferred to a remote prison near the Canadian border, which made it difficult for him to meet with counsel, and that he was subject to new limitations on the number and length of calls with counsel.

On October 3, 2017, after discovery had begun and Rodriguez had been released from prison, Rodriguez was deported to the Dominican Republic. Rodriguez cannot return to the United States for twenty years absent special permission from the Attorney General. *See* 8 U.S.C. § 1326(a)(2). The case continued to be actively litigated by pro bono counsel on Rodriguez's behalf; for instance, from January through November 2018, pro bono counsel deposed five Defendants and one additional witness.

On October 15, 2018, during a telephonic discovery conference, the Magistrate Judge sua sponte raised the issue of whether the case should be administratively closed until Rodriguez returns to the United States. After the parties briefed the issue, the Magistrate Judge administratively closed the case, stating:

6

The Court commends Plaintiff's *pro bono* counsel for the excellent work they have done on Plaintiff's behalf and their willingness to continue to represent Plaintiff in this action despite the substantial burden created by his deportation to the Dominican Republic. Nonetheless, considering the logistical difficulties and substantial cost of continuing with discovery; the logistical difficulties, required technological resources from the court, and prohibitive cost of trying the case without the Plaintiff in the courtroom; and the inefficient use of judicial resources in addressing the difficulties and disputes between the parties that would no doubt arise and require court intervention and resolution throughout the litigation, including throughout the remaining discovery and at trial, the Court concludes there is no further reason to maintain this action on the open docket for statistical purposes and directs administrative closure of the case.

App'x at 150-51. The text order noted that the case could be reopened for "good cause shown," which was defined as Rodriguez's "reentry into the United States and ability to complete prosecution of the case."

Rodriguez then moved for reconsideration. The district court adopted the Magistrate Judge's report and recommendation. It explained that "[a] significant body of jurisprudence—developed primarily in connection with lawsuits filed by incarcerated persons—instructs federal district courts not to dismiss or administratively close actions in which litigants are unable to appear without first considering less drastic alternatives." App'x at 213-14. The district court then listed those alternatives, including making provisions so the prisoner can travel

7

and attend the trial in person; trying the case on depositions or affidavits, or with video; and trying the case without a jury at a location near where the prisoner is located. The district court found that "none of the alternatives are practical" and Rodriguez "will be unavailable to appear at trial," App'x at 214, but failed to explain why the alternatives were unworkable.

The district court noted that "discovery in this case has not yet concluded." App'x at 214. While acknowledging that "there are mechanisms through which depositions can be taken remotely," it focused on the fact that "the nature of Plaintiff's allegations and alleged injuries will more than likely require additional examinations of Plaintiff." App'x at 215. It also decided that Defendants would not have a reasonable opportunity to depose any physicians treating Rodriguez in the Dominican Republic, but it did not explain why that was. Finally, the district court found that the case "will likely require the retention of an expert witness, who would necessarily be forced to conduct a physical examination of" Rodriguez in the Dominican Republic. App'x at 215. While "not unsympathetic" to Rodriguez, the district court concluded  that it "would be unduly prejudicial to Defendants and an inefficient use of judicial resources" to allow the case to continue absent Rodriguez's return. App'x at 215.

8

Rodriguez timely appealed.

**DISCUSSION**

This Court reviews a district court's decision to administratively close a case under an abuse of discretion standard. *Leftridge v. Conn. State Trooper Officer No. 1283*, 640 F.3d 62, 67 (2d Cir. 2011). A district court abuses its discretion when it "bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or if its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *Id.* (internal quotation marks, brackets, and citations omitted).

**I.     The Governing Legal Standard**

The issue of what standard a court applies in deciding whether to administratively close a case is an issue of first impression in our Circuit. The Fourth Circuit has taken up this question, however, and its decision is instructive.

In an analogous case involving an incarcerated litigant, the Fourth Circuit explained that "the most drastic alternatives of dismissal for failure to prosecute or indefinite stay should only be considered, if at all, as last resorts after all other

9

alternatives, starting with securing the prisoner's presence, have been rejected."

*Muhammad v. Warden*, 849 F.2d 107, 112-13 (4th Cir. 1988). Thus, while "an incarcerated litigant's right is necessarily qualified, . . . [that] does not mean that it can be arbitrarily denied by dismissal or indefinite stays; the law requires a reasoned consideration of the alternatives," such as:

> making provisions for the prisoner to attend in person, either at his own expense, or at government expense, and in any case in government custody; trying the case without the prisoner's presence in the courtroom, either on depositions or affidavits or with aid of video; and even trying the case without a jury in the place of incarceration.

*Id.* at 111-12.

We agree with the Fourth Circuit that administrative closure, as one of the "most drastic alternatives" available to a district court, should be used sparingly and only as a last resort. But we must still consider what that entails in practice. Is administrative closure properly considered as a last resort when other alternatives are infeasible, or only when other alternatives are actually impossible?

We hold that other alternatives must be virtually impossible, or so impractical as to significantly interfere with the operations of the district court or

impose an unreasonable burden on the party opposing the plaintiff's claim, in order to justify an administrative closure. An administrative closure lasting years, decades even, makes finding witnesses and conducting discovery "difficult if not impossible." *See id.* at 110. At bottom, an administrative closure effectively ends a case. *Id.* But this runs afoul of the fundamental principle set forth by Chief Justice Marshall, and echoed by courts ever since, that "where there is a legal right, there is also a legal remedy by suit or action at law, whenever that right is invaded." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803) (internal quotation marks and citation omitted).

The importance of this principle is even greater in civil rights suits given the weighty public interest in ensuring accountability for officials who violate the Constitution. This interest exists regardless of whose rights are violated. But when plaintiffs are unavailable due to incarceration or deportation, in particular, administrative closure may insulate officials from liability for violating the rights of prisoners or immigrants subject to removal. A strict standard is necessary to ensure that these plaintiffs are not deeply prejudiced.

We are mindful, of course, of the well-settled principle that "a district court possesses inherent authority to control the disposition of the causes on its

11

docket and has power to stay an action as an incident of that authority." *Range v. 480-486 Broadway, LLC*, 810 F.3d 108, 113 (2d Cir. 2015) (internal quotation marks and citation omitted). Our holding limits district courts' ability to administratively close a case as a matter of convenience in light of the countervailing prejudice to plaintiffs, but it does not bar administrative closure when appropriate. If, for instance, there is only a slim likelihood that an alternative will be possible, a district court may nonetheless administratively close the case.

Having determined that administrative closure is only appropriate as a last resort when other alternatives are virtually impossible or so impractical as to significantly interfere with the operations of the district court or impose an unreasonable burden on the party opposing the plaintiff's claim, we now turn to the question of whether that standard is met in Rodriguez's case based on the present record.

**II.    Application of this standard to Rodriguez's case**

Rodriguez argues that the alternatives listed in *Muhammad* are sufficient here because Rodriguez and other witnesses can adequately testify or be deposed by video, Defendants can obtain additional medical examinations through local

physicians in the Dominican Republic or by sending a physician there from the United States, and Rodriguez's pro bono counsel can effectively prosecute the case in Rodriguez's absence. In response, Defendants focus exclusively on their need to conduct additional medical examinations of Rodriguez, arguing that traveling to the Dominican Republic for examinations is cost-prohibitive and unduly burdensome.

On the present record, we cannot agree with Defendants that the alternatives Rodriguez has proposed meet the standard articulated in this opinion. We thus vacate the district court's order and remand for further proceedings, including any additional development of the record.

## A. The Need for Rodriguez to Appear at Trial

The district court's first basis for closing the case was Rodriguez's unavailability to appear at trial. The court summarily concluded that the alternatives provided in *Muhammad*, 849 F.2d at 112-13, which include making provisions for the litigant to travel and attend the trial in person, trying the case without the litigant's presence through affidavits or depositions, or trying the case without a jury where the litigant is located, were not "practical" in Rodriguez's case. App'x at 214. We agree that providing for Rodriguez to travel

13

and moving the trial to the Dominican Republic may not be possible. But we cannot conclude that the use of video depositions or videoconference at trial is virtually impossible or so impractical as to significantly interfere with the operations of the district court or impose an unreasonable burden on Defendants in this case, and there is no other need for Rodriguez to appear.

Under Federal Rule of Civil Procedure 43(a), "the judge has discretion to allow live testimony by video for good cause in compelling circumstances and with appropriate safeguards." *Thomas v. Anderson*, 912 F.3d 971, 977 (7th Cir. 2018) (internal quotation marks omitted). And circuit and lower courts alike have found a witness's immigration status to constitute good cause. *See, e.g.*, *El-Hadad v. United Arab Emirates*, 496 F.3d 658, 669 (D.C. Cir. 2007) (affirming the district court's decision to allow the witness to testify from Egypt by Internet video after repeatedly being denied a visa to enter the United States); *Lopez v. Miller*, 915 F. Supp. 2d 373, 396 n.9 (E.D.N.Y. 2013) ("Diaz was deported in 2003 to Santo Domingo . . . and may not legally reenter the United States, thus easily satisfying Rule 43(a)'s requirement." (citations omitted)). There is no evidence in the record to suggest that appropriate safeguards would be unavailable or that testimony by video would be infeasible, let alone virtually impossible.

14

Nor are there any other reasons why Rodriguez's physical presence at trial would be required. The district court cited to *Del Rio v. Morgado*, No. 10-cv-8955, 2013 WL 5520218, at *3 (C.D. Cal. Oct. 3, 2013); *Kuar v. Mawn*, No. 08-cv-4401, 2012 WL 3808620, at *9 (E.D.N.Y. Sept. 4, 2012); and *Brown v. Wright*, No. 05-cv-82, 2008 WL 346347, at *4 (N.D.N.Y. Feb. 6, 2008), for the proposition that "[c]ourts have regularly found that dismissal is appropriate in similar situations" when a litigant is unavailable at trial. App'x at 214, 215. But whether a litigant's unavailability at trial is cause for administrative closure is a case-specific inquiry, and thus any reliance on these cases requires some discussion of their applicability when compared to the facts in the present case.

A review of the facts in these cases indicates that they are distinct from the one at hand. *Del Rio*, *Kuar*, and *Brown* all involved pro se plaintiffs whose cases could not be prosecuted at trial without their physical presence. As such, the district courts in these cases recognized that the obstacle posed by these plaintiffs' unavailability could have been overcome with the assistance of counsel. *See Del Rio*, 2013 WL 5520218, at *3; *Kuar*, 2012 WL 3808620, at *1; *Brown*, 2008 WL 346347, at *4. By contrast, Rodriguez here has able and dedicated counsel, who the Magistrate Judge commended for "the excellent work they

15

have done on Plaintiff's behalf." App'x at 150. At oral argument, Rodriguez's counsel committed to continuing litigating on his behalf. Rodriguez's absence at trial perhaps could have posed an insurmountable hurdle had he been prosecuting the action pro se. Because Rodriguez's counsel will be presenting his claims, however, Rodriguez's absence will be inconsequential.

Because there is no support for the conclusion that the alternatives to Rodriguez's appearance at trial are virtually impossible or so impractical as to significantly interfere with the operations of the district court or impose an unreasonable burden on Defendants, Rodriguez's need to testify does not provide sufficient grounds to justify the district court's conclusion that the case must be administratively closed.

**B.** **The Need for Additional Rule 35 Examinations**

The district court also found that gathering additional medical evidence while Rodriguez is located in the Dominican Republic would be too burdensome for Defendants. We agree with the district court that "the nature of Plaintiff's allegations and alleged injuries will more than likely require additional examinations of Plaintiff by medical professionals hired by one or both parties."

16

App'x at 215.[3] But based on this record, we cannot say that allowing the case to continue without Rodriguez in the United States would unduly prejudice Defendants.

Under Rule 35, "[u]sually [the] plaintiff will be required to come to the place where he or she filed suit for the examination, in the absence of facts showing substantial reasons for insisting upon examination at his or her residence." 8B Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2234 (3d ed. 2010); *see also Williams v. Nguyen*, No. 16-cv-13983, 2017 WL 1177914, at *2 (E.D. La. Mar. 30, 2017) ("However, the usual case may give way where the plaintiff can demonstrate that the trip would be injurious to his health, *or that there is any other compelling reason for his reluctance*." (internal quotation marks and citation omitted) (emphasis added)); *cf. Romano v. Levitt*, No. 15-cv-518A, 2017 WL 2544076, at *2 n.1 (W.D.N.Y. May 5, 2017) (citing cases requiring a showing of inability to pay for travel expenses or other "unreasonable hardship or exceptional circumstances sufficient to

---

[3] To be clear, the district court has not yet issued an order for a physical examination, which "is not granted as of right." 8B Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2234.1 (3d ed. 2010).

17

overcome plaintiff's general obligation to travel at own expenses to examination by defense in district where plaintiff filed suit").

Rodriguez has established a compelling or substantial reason for his inability to appear in New York for an examination: he is legally barred from reentering the United States absent special permission from the Attorney General. *See* 8 U.S.C. § 1326(a)(2). Similar to medical conditions or financial hardship, Rodriguez's immigration status impedes his ability to travel to the United States. Thus, Rodriguez has ample justification for a waiver of the general requirement of appearing in the venue of jurisdiction for an examination. Indeed, district courts in our Circuit generally find that an individual's immigration status is "good cause" to waive the typical requirement that trial testimony be provided in person. *See*, *e.g.*, *Lopez*, 915 F. Supp. 2d at 396 n.9 (noting that a witness's deportation and inability to reenter under 8 U.S.C. § 1326(a) is good cause "easily satisfying" Rule 43(a)'s requirement). We fail to see why this reasoning should not apply here.

Defendants' arguments to the contrary are unavailing. As Defendants acknowledge, they have options in the event that Rodriguez needs to be examined—such as sending a physician from the United States to the Dominican

18

Republic or hiring a local physician to examine Rodriguez. At oral argument, other options like using telemedicine or hiring a United States-based physician already planning travel to the Dominican Republic for unrelated reasons, such as vacationing, were discussed as well. Defendants argue in their briefing that sending a physician would be cost-prohibitive and that they should not be required to use a local physician who is unfamiliar to them.[4] But the record is devoid of any evidence to support the assertions made in the brief as to cost, and there is likewise no apparent reason why Defendants could not find and vet a local physician to conduct the examination or use the alternatives raised at oral argument. On remand, the district court is directed to allow the parties to develop the record on the possible alternatives to an in-person appearance before reconsidering the issue.

### C.     The Need for Additional Depositions

---

[4] We note here as well that there is no absolute right for the moving party to choose the physician. 8B Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2234.2 (3d ed. 2010). But we assume for purposes of addressing Defendants' argument that they would be allowed to choose the physician.

The third basis the district court relied on in administratively closing Rodriguez's case is the need for additional depositions. Although the district court stated "that there are mechanisms through which depositions can be taken remotely," it found that "Defendants would not have a reasonable opportunity" to depose Rodriguez's overseas physicians on ongoing treatments. App'x at 214-15.

Many courts allow depositions by videoconference when the deposed individuals live abroad. *See, e.g.*, *United States v. One Gulfstream G-V Jet Aircraft Displaying Tail No. VPCES*, 304 F.R.D. 10, 17-18 (D.D.C. 2014) ("Ample case law recognizes that a videoconference deposition can be an adequate substitute for an in-person deposition, particularly when significant expenses are at issue or when the deposition will cover a limited set of topics."). This is true even when there have been "claims that the difficulty of 'coordination of document review' is one reason why a video deposition would be inappropriate" as "such issues are regularly satisfied by exchanging the documents in advance." *U.S. Sec. & Exchange Comm'n v. Aly*, 320 F.R.D. 116, 119 (S.D.N.Y. 2017). Other courts permit depositions to occur in a third, mutually accessible location distinct from the forum district. *See Republic of Turkey v. Christie's, Inc.*, 326 F.R.D. 402, 406

(S.D.N.Y. 2018) (ordering depositions of witnesses for the Republic of Turkey take place in London). If necessary, a court may shift the costs so that they are borne by the moving party. *See Packard v. City of New York*, 326 F.R.D. 66, 68 (S.D.N.Y. 2018).

Nothing in the record suggests that one of the above-mentioned alternatives would be virtually impossible or so impractical as to significantly interfere with the operations of the district court or impose an unreasonable burden on Defendants in the circumstances of the present case. Absent such evidence, we must reject the district court's conclusion that the need for additional depositions justifies the administrative closure.

**CONCLUSION**

Based on the record before us, the district court exceeded the bounds of its discretion in administratively closing this case, which should only be done as a "last resort[]." *Muhammad*, 849 F.2d at 112-13. Numerous alternatives to the issues identified by the district court exist, and on the present record, none seems virtually impossible or so impractical as to significantly interfere with the operations of the district court or impose an unreasonable burden on the party opposing the plaintiff's claim. We therefore vacate the district court's order

21

administratively closing Rodriguez's case and remand for further proceedings, including additional development of the record, consistent with this opinion. If upon remand the district court once more administratively closes Rodriguez's case and this matter returns to this Court, in light of the history of this litigation and the panel's familiarity with the matter, we respectfully direct the Clerk of this Court to return the matter to this panel for further review and adjudication. *Cf. United States v. Jacobson*, 15 F.3d 19 (2d Cir. 1994).