## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

DIGITAL ADVERTISING DISPLAYS,
INC., a Colorado corporation,

     Plaintiff - Appellant,

v.

NEWFORTH PARTNERS, LLC,
a California limited liability company;
DHANDO INVESTMENTS, INC.,
a Delaware corporation; ROBERT
HOFFER,

     Defendants - Appellees.

No. 20-1014
(D.C. No. 1:12-CV-00682-MEH)
(D. Colo.)

_____

## ORDER AND JUDGMENT[*]

_____

Before **HARTZ**, **KELLY**, and **EID**, Circuit Judges.

_____

Digital Advertising Displays, Inc. (DAD) appeals the district court's order

denying DAD's Motion for Contempt Citation and administratively closing this case.

We affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I

In 2013, DAD sued Defendants Robert Hoffer and his alleged alter egos, Newforth Partners, LLC and Dhando Investments, Inc. (Dhando), for damages for breach of contract and fraud with respect to various property, including interests in intellectual property, such as software, patent applications, and customer lists.[1] To resolve the dispute, the parties engaged in settlement negotiations facilitated by a magistrate judge, which resulted in October 2014 in their signature of an agreement titled "Material Terms of Settlement Agreement-Confidential" (the Agreement), Aplt. App., vol. 3 (sealed) at 15. The Agreement contemplated a future Final Settlement Agreement (FSA).

The Agreement's terms included Dhando's agreement to grant a license to DAD concerning "the Licensed Product." *Id.* at 16. It stated that the parties agreed (1) to "reduce the terms of this [A]greement into a motion for consent decree," *id.* at 18, and (2) "that any disputes arising from this Agreement will be subject to contempt proceeding[s] to be held before" the magistrate judge, *id.* at 19. The FSA was to be fully executed by the parties before they filed a motion for a joint consent decree. The parties further agreed that "[i]n the event of a dispute over the terms of [an FSA] that does not constitute a violation of the consent decree, [the magistrate

---

[1] The case was initially filed in 2012 in state court. The defendants removed it to federal court, where DAD filed an amended complaint. Although DAD named additional defendants in the amended complaint, they were later dismissed by stipulation.

2

judge] shall be the sole and final arbiter of the final terms of the [A]greement." *Id.* at 19. Defendants' counsel was to take the lead in drafting the FSA.

Despite various efforts by DAD, no FSA was produced. The district court administratively closed the case in early 2015 because of the lack of progress, but in response to DAD's motion to reopen in October 2017, the court reopened the matter, scheduled an evidentiary hearing, and in February 2019 directed the parties to submit their proposed license agreements. When the parties' further efforts to finalize the settlement ultimately failed, DAD moved for contempt. But the court denied the motion and closed the case on December 9, 2019, explaining:

> This has been one of the most difficult and frustrating experiences for the undersigned judicial officer in a fourteen-year career. As I see the landscape, to resolve the many factual disputes that have arisen between the parties since the signing of the original [Agreement] would require litigation the equivalent of an entirely new lawsuit. Indeed, if there was a binding settlement reached in this case, the appropriate mechanism for enforcing it is a separate breach of contract lawsuit. The [Agreement] contemplated my continuing involvement in the event the anticipated underlying documents (especially a license agreement) were executed. Unfortunately, as [DAD] so painfully notes, no such documents were ever completed. Further, as Defendants state, to the extent the parties conceded to this Court's contempt power, it was to enforce compliance with documents that have never been executed. My experience has shown that in the norm, reasonable people involved in litigation can usually reach a mutually beneficial resolution. I suspect the truth is that unreasonableness is at play here. But that must be for another case. I believe this Court has accomplished all that it can for the parties, within its jurisdiction.
>
> For the foregoing reasons, [DAD's] Motion for Contempt Citation . . . is **denied**. Further, the Clerk of the Court is directed to **close** this case.

Aplt. App., vol. 1 at 144-45 (citation omitted). This appeal followed.[2]

---

[2] Defendants have not appeared in this court on appeal.

II

We first consider our jurisdiction over this appeal. We have jurisdiction to review the district court's "final decisions." *See* 28 U.S.C. § 1291. Ordinarily, a "final decision" is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Caitlin v. United States*, 324 U.S. 229, 233 (1945). Put another way, it is a decision "by which the district court disassociates itself from a case." *McClendon v. City of Albuquerque*, 630 F.3d 1288, 1292 (10th Cir. 2011) (internal quotation marks omitted).

The district court administratively closed the case and did not enter a final judgment. But the administrative closure order did not contemplate any further proceedings in this case. *See* Aplt. App., vol. 1 at 145 ("I believe this Court has accomplished all that it can for the parties, within its jurisdiction."). Because that order "ended the litigation and effectively disassociated the district court from the case," it qualified as a final decision that we have jurisdiction to review. *Hayes Fam. Tr. v. State Farm Fire & Cas. Co.*, 845 F.3d 997, 1004 (10th Cir. 2017) (addressing finality in context of administrative closure).

III

We review the district court's decision to administratively close a case for an abuse of discretion. *See Rodriguez v. Gusman*, 974 F.3d 108, 112 (2d Cir. 2020). An abuse of discretion occurs when the district court makes "a clear error of judgment or exceed[s] the bounds of permissible choice in the circumstances." *Hayes Fam. Tr.*, 845 F.3d at 1004 (internal quotation marks omitted). "The abuse-of-discretion

4

standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Id.* at 1005 (internal quotation marks omitted).

## IV

DAD raises two issues on appeal: (1) "Did the District Court err by finding an ambiguous and vague *interim* settlement agreement to be an enforceable contract when the parties thereto contested the meaning of all material terms?" and (2) "Did the District Court err by *declining* to enforce an *interim* settlement agreement crafted such that the District Court *retained* jurisdiction to enforce the agreement and instead ordering the case closed?" Aplt. Opening Br. at 5. This statement of the issues appears self-contradictory. On one hand, DAD asserts that the interim settlement agreement was too ambiguous and vague to be an enforceable contract. On the other hand, it argues that the district court erred by failing to enforce that agreement. For reasons we will explain, neither argument prevails here; DAD fails to show the district court abused its discretion by closing the case rather than enforcing the Agreement.

## A

"[S]ettlement agreements are contracts," *Walters v. Wal-Mart Stores, Inc.*, 703 F.3d 1167, 1172 (10th Cir. 2013), and "[a] trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it," *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993). Some of the language DAD uses seems to invoke a contractual theory of enforcement. *See, e.g.*, Aplt. Opening Br. at 26 (complaining that DAD lost the

benefit of its bargain, which resulted from its "compromis[ing] extraordinarily valuable claims"). But by repeatedly denying that the Agreement was an enforceable contract, DAD has effectively conceded that this theory is meritless. *See, e.g.*, *id.* at 17 ("[T]he Parties never actually agreed to anything when the Agreement was signed"); 22 ("[I]t is plainly evident that the Parties failed to form a contract when they signed the Agreement"); 29 ("[T]he Court erred in the finding that the Agreement was a valid contract"). We therefore decline to consider whether the district court should have enforced the Agreement as a contract between the parties.

B

This leaves us with what appears to be DAD's real argument: that the district court should have exercised its contempt powers to compel the defendants to finalize the settlement. The problem with that argument is that the Agreement was (at most) a contract between the parties, not a court order. Although the parties contemplated the entry of an enforceable consent decree, that was never accomplished.

The Agreement itself could not be enforced through the court's contempt power, because "[s]tanding alone, a settlement agreement is nothing more than a contract; the imprimatur of an injunction is required to render it a consent decree enforceable through contempt." *Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.*, 84 F.3d 367, 370 (10th Cir. 1996) (internal quotation marks omitted). In other words, "a provision of a settlement agreement not explicitly set forth in a judicial order is not enforceable by contempt." *Id.* at 371. *See also, e.g.*, *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983) (distinguishing between a settlement

6

agreement and a consent decree, noting that "[j]udicial approval of a settlement agreement places the power and prestige of the court behind the compromise struck by the parties. . . . The injunctive quality of consent decrees compels the court to . . . protect the integrity of the decree with its contempt powers").

To bolster its argument, DAD points to the Agreement's provisions purporting to grant the district court enforcement power through contempt proceedings. For example, Paragraph 10 states that "any disputes *arising from this Agreement* will be subject to contempt proceeding[s] to be held before [the magistrate judge] or his successor." Aplt. App., Vol. 3 (sealed) at 19 (emphasis added). But none of the provisions of the Agreement were ever incorporated into an enforceable decree. Further, as the district court recognized, those stipulated enforcement provisions would have been triggered only if the parties had executed the anticipated documents (resulting in the eventual entry of a consent decree), which they did not.

V

DAD also requests that this case be reopened and set for trial. *See, e.g.*, Aplt. Opening Br. at 23, 28. To this end, it asks us to set aside the district court's order closing the case. It argues that the district court abused its discretion by closing the case, leaving DAD without a "settlement, dismissal, or trial." *Id.* at 22.

We discern no abuse of discretion in the district court's decision to administratively close the case, given the parties' failure to finalize their settlement. The magistrate judge was in a position to determine that leaving the case open for further settlement negotiations would have been futile and a waste of judicial

7

resources. Had the parties reached a binding agreement, the magistrate judge could perhaps have kept the case open to enforce it—but as we have seen, DAD insists there was no enforceable agreement.

This does not necessarily leave DAD without a remedy. Assuming that proceeding with the case—as opposed to trying to implement a moribund settlement—remains a live possibility, DAD could still ask the district court to reopen the case and set it for trial.[3] *See* D. Colo. Civ. R. 41.2 (permitting court to "order the clerk to close a civil action administratively *subject to reopening for good cause*" (emphasis added)).

## VI

We affirm the district court's order denying DAD's motion for contempt citation and closing the case.

DAD previously filed a motion to seal certain documents, which are currently found in Volume III of its appendix. The clerk provisionally granted that motion in part, subject to a final determination by the merits panel. Upon further review the

---

[3] DAD mentioned this alternate form of relief in a single sentence at the end of its district-court reply brief in support of its contempt motion. The district court understandably did not address this conclusory and unsupported suggestion. DAD remains free to seek reopening and a setting for trial through a better-developed argument to the district court. We take no position on whether DAD has shown sufficient diligence in seeking reopening for a trial setting to make such relief appropriate here.

order provisionally sealing portions of Volume III is vacated and the motion to seal is denied. The clerk is directed to unseal the sealed documents from Volume III.

Entered for the Court

Harris L Hartz
Circuit Judge