21-2841-pr
Rodriguez v. Gusman

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of January, two thousand twenty-three.

PRESENT:  DENNIS JACOBS,
RAYMOND J. LOHIER, JR.,
ALISON J. NATHAN,
*Circuit Judges*.

------------------------------------------------------------------

JOSE RODRIGUEZ,

*Plaintiff-Appellant*,

v.                                                                        No. 21-2841-pr

DR. GUSMAN, MEDICAL DIRECTOR,
EASTERN CORRECTIONAL FACILITY, FKA
DR. GUZMAN, FKA DR. GUSMAN, NANCY
ANTHONY, REGISTERED NURSE, EASTERN
CORRECTIONAL FACILITY, FKA MS.

ANTHONY, DR. ANN ANDOLA, REGISTERED NURSE, EASTERN CORRECTIONAL FACILITY, FKA MS. ANNDOLA, FKA DOCTOR ANANDOLAS, JEFFREY MCKOY, DR. BIPIN BHAVSAR, EASTERN CORRECTIONAL FACILITY, MEGAN MCGLYNN, ROGER TRAYNOR, DAVID JACOBS, AMANDA DEMSHICK,

*Defendants-Appellees*,

THOMAS GRIFFIN, SUPERINTENDENT AND/OR CHIEF EXECUTIVE OFFICER, EASTERN CORRECTIONAL FACILITY, DR. JOHN DOE 1-10, HEALTH CARE PROVIDE, EASTERN CORRECTIONAL FACILITY, JANE DOE, REGISTERED NURSE, EASTERN CORRECTIONAL FACILITY, JOHN/JANE DOE, NURSE ADMINISTRATOR OF MEDICAL SERVICES, EASTERN CORRECTIONAL FACILITY, NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, ANTHONY J. ANNUCCI, BRIAN FISCHER, DARWIN LACLAIR, JOHN/JANE DOE, DOCCS ADMINISTRATOR, JOHN/JANE DOE, PRISON ADMINISTRATOR, BRIAN MCCULLOUGH,

*Defendants*.

------------------------------------------------------------------

FOR PLAINTIFF-APPELLANT: MATTEO GODI (Jane B. O'Brien, *on the brief*), Paul, Weiss, Rifkind, Wharton & Garrison

LLP, Washington, DC

FOR DEFENDANTS-APPELLEES: SARAH L. ROSENBLUTH, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Victor Paladino, Senior Assistant Solicitor General, *on the brief*), *for* Letitia James, Attorney General for the State of New York, New York, NY

Appeal from a judgment of the United States District Court for the Northern District of New York (Mae A. D'Agostino, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court is AFFIRMED.

Jose Rodriguez appeals from a grant of summary judgment entered in the United States District Court for the Northern District of New York (D'Agostino, J.) in favor of the Defendants-Appellees on Rodriguez's claims, under 42 U.S.C. § 1983, of deliberate indifference to his serious medical needs in violation of the Eighth Amendment, retaliatory transfer in violation of the First Amendment, and denial of access to the courts in violation of the First Amendment. We assume the parties' familiarity with the underlying facts and the record of prior proceedings, to which we refer only as necessary to explain our decision to

3

affirm.[1]

I. Background

While incarcerated at Eastern Correctional Facility, Rodriguez complained of a racing heart rate, palpitations, and headaches, and was diagnosed with "elevated" blood pressure. From 2008 to 2011, Rodriguez underwent multiple electrocardiograms and blood tests, all of which were normal. Tragically, however, in 2012 Rodriguez suffered a hemorrhagic stroke while exercising, and he is now permanently disabled.

Following his stroke, Rodriguez was transferred to Shawangunk Correctional Facility, a maximum security prison. According to Rodriguez, years later, in May 2016 "a Shawangunk guard told [him] that he knew . . . Rodriguez 'wanted to get money from the State.'" Joint App'x 41. In July, approximately two months this comment, Rodriguez was transferred to Franklin Correctional Facility, a medium security prison. There, prison officials strictly enforced a New York State Department of Corrections and Community Supervision ("DOCCS") directive that limited Rodriguez to one 30-minute

---

[1] We previously described some of these facts and prior proceedings in greater detail. See Rodriguez v. Gusman, 974 F.3d 108, 110–113 (2d Cir. 2020).

"attorney legal call[]" every 30 days ("DOCCS Directive 4423"). Rodriguez was released in 2017 and deported to the Dominican Republic.

In 2018 Rodriguez filed the operative complaint in this case. As noted, Rodriguez claims that the Defendants: (1) were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment; (2) retaliated against him for filing this lawsuit by transferring him to another correctional facility, in violation of the First Amendment; and (3) denied him access to the courts, again in violation of the First Amendment. The District Court granted summary judgment in favor of the Defendants on all three claims.

## II. Discussion

"Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Doninger v. Niehoff, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).

### A. Deliberate Indifference

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to his

5

serious medical needs." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (cleaned up). Every deliberate indifference claim must satisfy an objective and a subjective component: "First, the alleged deprivation must be, in objective terms, sufficiently serious. Second, the defendant must act with a sufficiently culpable state of mind." Id. (quotation marks omitted). The defendant must have been "actually aware of a substantial risk that serious inmate harm w[ould] result." Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006).

Rodriguez failed to establish the subjective component of his deliberate indifference claim. Although Rodriguez contends that the Defendants should have prescribed "standard medications for treating high blood pressure . . . [such as] beta blockers, calcium channel blockers, and ACE inhibitors," and ordered more extensive "tests that can help detect a risk of stroke, including MRIs and Holter monitors," Appellant's Br. 23, there is no genuine factual dispute that (1) his blood pressure was continuously monitored, (2) he was issued a blood pressure card, and (3) following his complaints, an electrocardiogram and bloodwork were ordered and produced normal results. Especially in light of these measures and his normal test results, Rodriguez has not adduced evidence that any act or failure to act by the Defendants reflects a conscious disregard of a

substantial risk that he would suffer a stroke.    Insofar as Rodriguez disagrees with the Defendants' medical judgment as to the proper course of treatment, that does not support a constitutional claim for deliberate indifference.    See Chance, 143 F.3d at 703; see also Estelle v. Gamble, 429 U.S. 97, 107 (1976) ("[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment.").

Rodriguez, whose primary language is Spanish, also argues that he was unable to communicate with the medical staff because of a language barrier. But while Rodriguez denies that he can adequately communicate with doctors in English, he fails to identify record evidence suggesting that the Defendants themselves were actually aware that Rodriguez's language abilities posed a substantial risk of serious harm.    See Salahuddin, 467 F.3d at 280.

B. Retaliatory Transfer

We generally "approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." Dolan v. Connolly, 794 F.3d 290, 295 (2d Cir. 2015) (quotation marks omitted).

7

To establish a First Amendment retaliation claim, a prisoner must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Id. at 294 (quotation marks omitted). The Defendants concede that Rodriguez satisfied prongs one and two on summary judgment.

As to the third requirement of a causal connection, however, Rodriguez has not adduced evidence "sufficient to support the inference" that his grievances and lawsuit "played a substantial part in" his transfer from Shawangunk Correctional Facility to Franklin Correctional Facility. Davis v. Goord, 320 F.3d 346, 354 (2d Cir. 2003) (quotation marks omitted). Defendants Amanda Demshick and Megan McGlynn, who processed Rodriguez's transfer, testified that they were unaware of his prior grievances or the existence of this lawsuit at the time they processed the transfer. To contradict these sworn statements, Rodriguez relies principally on the guard's comment that Rodriguez is "the one who wants money from the state." Joint App'x 315. But one guard's knowledge of Rodriguez's lawsuit does not support the inference that others, including the two Defendants, did as well, especially since the guard

8

played no part in Rodriguez's transfer.   See Brandon v. Kinter, 938 F.3d 21, 36–37, 40 (2d Cir. 2019).

C. Access to Courts

Finally, we turn to Rodriguez's claim that defendants David Jacobs, Jeffrey McKoy, and Roger Traynor violated his First Amendment right to access the courts by enforcing DOCCS Directive 4423.   We assume, without deciding, that restrictions on an inmate's telephone use may, in certain circumstances, violate the inmate's right to access the courts.   To establish such a violation, a plaintiff would have to show "that the defendant took or was responsible for actions that hindered [a plaintiff's] efforts to pursue a legal claim."   Davis, 320 F.3d at 351 (quotation marks omitted).

"Qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   Zellner v. Summerlin, 494 F.3d 344, 367 (2d Cir. 2007) (quotation marks omitted).   When government officials act pursuant to an official prison policy, qualified immunity turns in part on "whether a reasonable officer might have believed that the challenged order was

9

lawful in light of legitimate penological interests supporting [the] Directive . . . as it existed at the time." Holland v. Goord, 758 F.3d 215, 223 (2d Cir. 2014).

Rodriguez does not dispute that Directive 4423 was intended to "ensure that all inmates had equal access to their attorneys" during a time of increasing prison populations. Special App'x 22. Rodriguez also "does not contend that [the Defendants] prevented him from filing his . . . action, or from filing whatever papers he wished." Dixon v. von Blanckensee, 994 F.3d 95, 106 (2d Cir. 2021) (quotation marks omitted). Indeed, while incarcerated at Franklin, Rodriguez had eleven phone calls with his attorneys. Moreover, Directive 4423 allowed for inmates' attorneys to contact DOCCS Counsel's Office or obtain a court order to circumvent this policy. See Joint App'x 198–99. Under these undisputed circumstances, we agree with the District Court that it was reasonable for Jacobs, McKoy, and Traynor to believe that enforcing Directive 4423 "did not unconstitutionally restrict Plaintiff's access to the courts." Special App'x 22. We therefore affirm the District Court's grant of summary judgment in favor of these three defendants on the issue of qualified immunity with respect to Rodriguez's First Amendment access to courts claim.

We have considered Rodriguez's remaining arguments and conclude that

they are without merit. For the foregoing reasons, the judgment of the District Court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court