**INTERNATIONAL STAR CLASS YACHT RACING ASSOCIATION, Plaintiff–Appellant–Cross–Appellee,**

v.

**TOMMY HILFIGER U.S.A., INC., Defendant–Appellee–Cross–Appellant.**

**Docket Nos. 97–7761, 97–7799.**

United States Court of Appeals, Second Circuit.

Argued March 5, 1998.

Decided May 29, 1998.

J. Joseph Bainton, New York City (Thomas D. Drescher, John G. McCarthy, Ross & Hardies, of counsel), for Plaintiff–Appellant–Cross–Appellee.

Louis S. Ederer, New York City (Joseph H. Lessem, Cowan, Liebowitz & Latman, P.C.; Steven Gursky, Robert Devlin, Gursky & Associates, of counsel), for Defendant–Appellee–Cross–Appellant.

Before OAKES, NEWMAN and CABRANES, Circuit Judges.

OAKES, Senior Circuit Judge:

The International Star Class Yacht Racing Association ("ISCYRA") appeals from the decision of the United States District Court for the Southern District of New York, Robert P. Patterson, Jr., *Judge*, denying ISCYRA monetary relief and attorney fees for the infringing use of ISCYRA's mark "Star Class" by Tommy Hilfiger U.S.A., Inc. ("Hilfiger"). The district court held that ISCYRA had failed to demonstrate that Hilfiger used the mark in bad faith. Hilfiger cross-appeals the district court's calculation of damages without considering evidence of Hilfiger's costs or the percentage of profits from sales attributable to Hilfiger's mark rather than

ISCYRA's, and its decision to strike the testimony of Hilfiger's lead trial counsel. We vacate and remand the court's findings as to Hilfiger's bad faith because the district court improperly relied on factual findings from an earlier, unrelated antitrust case. We also vacate the district court's determination as to Hilfiger's costs and deductions, but affirm the decision to exclude the testimony of Hilfiger's counsel.

## I. BACKGROUND

ISCYRA is a non-profit corporation created to govern and promote the sport racing of a class of sail boats known as "Star Class" yachts. ISCYRA owns the rights to the design of Star Class boats, and monitors the construction, certification, and registration of vessels in this class. One hallmark of a Star Class vessel is that it must display a solid five-point star on its main sail. ISCYRA also uses the star along with the words "Star Class" on hats, clothing, pins, and decals sold to the public. ISCYRA permits yacht clubs hosting regattas to use the star insignia and the term "Star Class" on promotional materials, and collects royalties for the use of these marks on clothing and other marketable materials. ISCYRA has never registered "Star Class" for federal trademark protection.

In March 1994, ISCYRA learned that Tommy Hilfiger, a leading designer and marketer of men's clothing, was manufacturing and selling garments bearing the words "Star Class" with the star insignia. Promotional materials issued with the collection described the clothing as "classic nautical sportswear" with "authentic details taken from the sport of competitive sailing" and "elements and patterns taken directly from actual racing sails."[1] Hilfiger's name and logo also appeared on most of the garments.

While designing the clothes, Hilfiger had requested from its attorneys a trademark screening search for the words "Star Class." Hilfiger did not specify its intended use of the words, nor did it reveal that it had taken the term from "the sport of competitive sail-

---

1. Hilfiger's designer admitted at trial to examining books and other materials on sailboat racing which referred to Star Class racing and Star Class boats while designing the collection. *See*

*ISCYRA v. Tommy Hilfiger U.S.A., Inc.*, No. 94 Civ. 2663, 1995 WL 241875, at *3 (S.D.N.Y. April 26, 1995).

ing." The search was thus limited to registered federal trademarks, with a particular emphasis on trademarks in class 25, a clothing classification. One of Hilfiger's attorneys, Neil A. Burstein, reported to Hilfiger that he had found no competing marks in his search, and stated, "At this point, we would not necessarily rule out your use and registration of this mark, *subject to our usual disclaimers regarding the need to first obtain and review a full trademark search.*" (emphasis in original). Hilfiger did not conduct a full search of all prior commercial uses of the term until after it was sued by ISCYRA, at which point it learned that "Star Class" was a mark in the yachting context.

On April 13, 1994, ISCYRA sued Hilfiger for false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a) (1994), common law trademark infringement, and injury to its business reputation and trademark dilution under New York state law. On April 25, 1995, the district court granted ISCYRA a permanent injunction to bar Hilfiger's use of the mark "Star Class," but declined to award monetary relief or attorney fees because it determined that ISCYRA had not sustained any actual damages and that Hilfiger had not used the mark in bad faith.

ISCYRA appealed to this Court, which affirmed in part and vacated in part. *See ISCYRA v. Tommy Hilfiger, U.S.A., Inc.,* 80 F.3d 749 (2d Cir.1996). We ruled that the district court had made erroneous and incomplete findings of fact and remanded for further consideration of whether Hilfiger had willfully infringed ISCYRA's mark. In particular, we held that the district court should have considered as evidence relevant to determining bad faith Hilfiger's failure to follow its attorneys' advice to conduct a full search and Hilfiger's continued marketing of the "Star Class" clothing after ISCYRA had filed suit. *Id.* at 754.

On remand, the district court again determined that insufficient evidence existed to show that Hilfiger had used ISCYRA's mark in bad faith. The district court initially allowed Hilfiger to reopen the record to present additional testimony by Hilfiger's lead counsel, Steven Gursky, relating to the legal advice received by Hilfiger prior to using ISCYRA's mark. However, in its opinion issued on March 4, 1997, the district court rejected this new testimony *in toto,* reasoning that Hilfiger was on notice in the first trial that bad faith was at issue, and should have introduced all relevant evidence then. The court then considered the two elements deemed important by this Court—the failure to conduct a full search in contravention of the disclaimer contained in Burstein's letter, and the continued sale of garments after the commencement of the suit. As to the failure to conduct a full search, the district court evaluated the disclaimer letter in light of the court's understanding of prevailing industry practice in trademark searches. To establish industry custom, the district court took judicial notice of facts and testimony from *Corsearch v. Thomson & Thomson,* 792 F.Supp. 305 (S.D.N.Y.1992), an antitrust case that the district judge had tried in 1991 concerning trademark search firms. The court found that standard industry practice was to conduct only "knock-out" or "rule-out" searches of names and symbols in the database of federally registered trademarks before using a contemplated mark, and that comprehensive or more sophisticated searches were reserved, when ordered at all, for marks that were seriously being considered for trademark registration. *ISCYRA v. Tommy Hilfiger, U.S.A., Inc.,* 959 F.Supp. 623, 625–26 (S.D.N.Y.1997) (citing *Corsearch,* 792 F.Supp. at 311). The court therefore interpreted Burstein's disclaimer as boilerplate cautionary language, referring to the need to conduct a full search only if Hilfiger intended to register the term "Star Class" and use it as a stand-alone trademark. As Hilfiger claimed to use the term "Star Class" only as decoration and not as a stand-alone trademark, the court concluded that "there was no reason for Hilfiger to order its law firm to undertake a full search," and that its failure to do so was not inconsistent with its attorneys' advice. *ISCYRA,* 959 F.Supp. at 627–28.

Finally, the court found that Hilfiger's continued sale of garments bearing the "Star Class" mark was consistent with the opinion of Hilfiger's attorneys that ISCYRA's nonregistered mark was entitled to "rather

weak" protection, and thus was also not evidence of bad faith. *Id.* at 628–29. Anticipating the possibility that this Court might not agree on appeal, the district court determined, as evidence of damages, that Hilfiger shipped $818,419.85 worth of infringing goods after receiving ISCYRA's cease-and-desist letter. The court made no deduction for Hilfiger's costs because "[d]efendant offered no evidence of its costs attributable to these sales." *Id.* at 629. The court denied both ISCYRA's and Hilfiger's motions for reconsideration on June 5, 1997. This appeal followed.

## II. DISCUSSION

On appeal, ISCYRA contends that the district court relied on erroneous conclusions of law and fact in making its determinations. Among other claims, ISCYRA argues (1) that it was improper for the court judicially to notice facts from *Corsearch* that were outside the record of this case, and (2) that the court erred in not considering all of Hilfiger's profits as evidence of damages, rather than just profits from sales made after receipt of IS-CYRA's cease-and-desist letter. Hilfiger cross-appeals the decision to disregard the testimony of its counsel, Steven Gursky, and the court's failure to consider evidence of Hilfiger's costs contained in one of ISCYRA's exhibits, and evidence of sales due to the appeal of Hilfiger's mark in calculating damages.

### A. Judicial Notice

██ The Federal Rules of Evidence provide that courts may only take judicial notice of facts outside the trial record that are "not subject to reasonable dispute." Fed.R.Evid. 201(b). Such facts must either be "(1) generally known within the territorial jurisdiction

of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Id.; see also Alvary v. United States,* 302 F.2d 790, 794 (2d Cir.1962). Because the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b). *See* Fed. R.Evid. 201(b) advisory committee notes; *cf. Brown v. Piper,* 91 U.S. 37, 43, 23 L.Ed. 200 (1875) ("Care must be taken that the requisite notoriety exists. Every reasonable doubt upon the subject should be resolved promptly in the negative.").

██ In this case, the district court relied on statements of fact contained in its 1992 *Corsearch* opinion to establish prevailing trademark search practices in 1993.[2] This was error. As we stated in *Liberty Mutual Ins. Co. v. Rotches Pork Packers, Inc.,* 969 F.2d 1384 (2d Cir.1992), "A court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" *Id.* at 1388 (holding that facts contained in a bankruptcy court order were an improper subject for judicial notice) (quoting *Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2d Cir.1991)). Facts adjudicated in a prior case do not meet either test of indisputability contained in Rule 201(b): they are not usually common knowledge, nor are they derived from an unimpeachable source. *See, e.g., United States v. Jones,* 29 F.3d 1549, 1553 (11th Cir.1994) (holding that findings concerning the defendant's work habits made by another district court in a separate litigation were not sufficiently indisputable to be

2. The court considered such evidence relevant to interpreting the disclaimer contained in Burstein's letter and in evaluating Hilfiger's response to the letter. While we agree that industry custom is relevant to determining whether Hilfiger engaged in 'willful blindness' by refusing to conduct a more comprehensive search, such evidence would not necessarily be dispositive of the question. For instance, even if 'knockout' searches are sufficient in the usual case, here Hilfiger was aware that it was lifting "authentic details from the sport of competitive sailing." As we said in *ISCYRA I,* "Given Hilfiger's awareness that it was copying ... 'from the sport of competitive sailing,' it should have shown greater concern for the possibility that it was infringing on another's mark." 80 F.3d at 753. We believe that Hilfiger's failure to conduct a full search therefore must be evaluated not only in light of industry custom, but also in light of its knowledge that 'Star Class' might be a mark in the yachting context, together with any other factors that might prove or negate bad faith.

judicially noticed); *Holloway v. Lockhart,* 813 F.2d 874, 879 (8th Cir.1987) (declining to allow judicial notice of finding in a related litigation that use of tear gas against a group of inmates was reasonable and necessary because that fact could only be ascertained by independent examination and evaluation of witnesses); *Ujvari v. United States,* 212 F.Supp. 223, 228 (S.D.N.Y.1963) (refusing to take judicial notice of exchange rates found in previous Tax Court cases because court must independently determine questions of fact in case before it).[3] The suggestion has also been made that allowing courts to rely on factual findings from previous cases could render the doctrine of collateral estoppel superfluous, *see* 21 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence* § 5106 at 245 (Supp.1998); *Jones,* 29 F.3d at 1553, though this may overstate the case.

Moreover, prevailing trademark search practices may well have changed or developed in the intervening years between the *Corsearch* trial and the events at issue in this case. ISCYRA cites to at least one article on the subject, published in 1994, stating that the "usual" practice for trademark counsel is to conduct a full search once a mark passes its initial screening. *See* Glenn A. Gundersen, *Trademark Searching: A Practical and Strategic Guide to the Clearance of New Marks in the United States* 17 (1994). Since the industry practice is subject to dispute, ISCYRA is entitled to "have its 'day in court,' and, through time-honored methods, test the accuracy of [Hilfiger's] submissions and introduce evidence of its own." *Oneida Indian Nation of New York v. State of New York,* 691 F.2d 1070, 1086 (2d Cir.1982) (favoring this course to judicial notice where secondary sources are disputed).[4]

■ Hilfiger claims that a remand is unnecessary since the district court relied on Burstein's trial testimony and prior case law, as well as facts contained in the *Corsearch* opinion, to ascertain that defendant's minimal trademark search efforts did not constitute willful infringement. While the district court did consider these other materials, it used these sources primarily to bolster the conclusions found in the *Corsearch* opinion. *See ISCYRA,* 959 F.Supp. at 626, 627–28. For instance, the court evaluated Burstein's testimony in light of its agreement with the trade practices revealed in *Corsearch. Id.* at 628. Because the district court did not independently evaluate the significance of this other evidence, we cannot say that the court would have reached the same conclusions without relying on the *Corsearch* findings. We therefore vacate the lower court opinion without reaching the bulk of ISCYRA's other claims, and remand for further proceedings.

## B. Profits

■ The one remaining issue in ISCYRA's appeal that we address is whether the district court erred by not considering, as evidence of damages, all of Hilfiger's profits from sales of "Star Class" clothing, rather than just profits from sales made after the receipt of the cease-and-desist letter. A district court faced with a Lanham Act violation possesses "some degree of discretion in shaping [the] relief" according to the principles of equity and the individual circumstances of

**3.** The cases cited by the district court in its opinion denying the parties' motions for reconsideration do not apply. In those cases, the appellant had either waived its right to object to the use of judicial notice, *see United States v. Vasquez–Guerrero,* 554 F.2d 917, 919 n. 1 (9th Cir.1977), or the decision pre-dated the enactment of Rule 201(b), *see, e.g., In re Diversey Hotel Corp.,* 165 F.2d 655, 657 (7th Cir.1948).

**4.** Our analysis is not changed by ISCYRA's failure to object to the district court's consideration of findings from *Corsearch* at the second trial because the district court never explicitly informed the parties that it planned to rely on the *Corsearch* opinion. Indeed, in its only comments on the subject, the court appeared to acknowl-

edge that such reliance would be improper. *See, e.g.,* Tr. at 572 ("Let me tell you something that troubled me when I reviewed the Court of Appeals' opinion. I think, maybe unbeknownst to myself, I unwittingly took into account testimony I heard in the Thomson & Thomson case as to how people go about ordering trademark searches as a regular course of business, and when they use the scan and when they go for a full search. And I don't know how to divorce what I learned there from the record here.... I leave it with you as maybe you have thoughts about it."). ISCYRA therefore could not reasonably be expected to raise the issue until after the district court issued its opinion.

each case. *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1537 (2d Cir.1992) (citing 15 U.S.C. § 1117(a) (1994)). Nevertheless, that discretion must operate within the parameters for allowing an accounting of profits in this circuit. *Id.*

We have held that an accounting for profits is available, even if a plaintiff cannot show actual injury or consumer confusion, " 'if the accounting is necessary to deter a willful infringer from doing so again.' " *Id.* (quoting *Burndy Corp. v. Teledyne Indus., Inc.*, 748 F.2d 767, 772 (2d Cir.1984)). As with the decision to award profits at all, the decision whether to award a full or partial accounting must be based on what is necessary to deter future misconduct. In *W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 664 (2d Cir.1970), a case concerning particularly egregious infringement of a competitor's mark, we stated that "the only way the courts can fashion a strong enough deterrent is to see to it that a company found guilty of willful infringement shall lose *all* its profits from its use of the infringing mark." (emphasis in original). While this language could be read to suggest that a defendant must disgorge all of its profits any time willful infringement is proved, more recent cases establish that a district court has discretion to fashion an alternative remedy, or to award only a partial accounting, if the aims of equity would be better served. *See George Basch*, 968 F.2d at 1540 (stating that a finding of willful infringement is necessary but not sufficient to award an accounting for profits); *Allen v. Men's World Outlet*, 679 F.Supp. 360, 371 (S.D.N.Y.1988) (declining to award an accounting for profits for willful use of the plaintiff's likeness in an advertisement because a permanent injunction would adequately serve the goal of deterrence). As the record here is unclear as to the egregiousness of Hilfiger's conduct, we express no opinion at this stage as to the appropriate award of profits that might be necessary to deter future wrongdoing. We leave this question for the district court to consider, if necessary, on remand.

■ On its cross-appeal, Hilfiger claims that the district court improperly calculated the profits due to ISCYRA by disregarding evidence of Hilfiger's costs and other deductions offered at trial. We are inclined to agree. As to costs, Hilfiger points to cost figures contained in one of ISCYRA's exhibits. Although this evidence was introduced by ISCYRA to demonstrate Hilfiger's sales, ISCYRA did not specify any limitations as to its contents or usage. Moreover, the cost figures in Exhibit 90 were mentioned at one point during the trial when the sales figures were corrected. Although defendant's counsel neglected to alert the District Judge to its claim that Exhibit 90 provided a basis for deriving a profit margin, the existence of the cost data in the record undermines the court's finding that no evidence of costs existed. On remand, the district court should consider such evidence, if necessary, according it whatever weight is appropriate.

■ Hilfiger further claims that the district court should have subtracted the percentage of profits attributable to Hilfiger's mark rather than ISCYRA's in assessing any award to ISCYRA. In *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206, 62 S.Ct. 1022, 86 L.Ed. 1381 (1942), the Supreme Court held that a plaintiff "is not entitled to profits demonstrably not attributable to the unlawful use of his mark," but that the burden of proving any deduction for sales not based on the infringing mark falls upon the infringer. *Id.* at 206–07, 62 S.Ct. 1022; *see also* 15 U.S.C. § 1117 (1994); *George Basch*, 968 F.2d at 1540 (listing the degree of certainty that the defendant benefitted from its unlawful conduct as one factor to consider in determining whether to order an accounting for profits in cases of willful infringement). Hilfiger presented evidence at trial through the testimony of Allan Zwerner, a buyer for a large chain of department stores, that some portion of the sales of its nautical sportswear line was attributable to the appeal of Hilfiger's well-known mark and reputation. The district court may consider this evidence on remand in assessing whether Hilfiger has met its burden of proof.

■ However, where infringement is especially malicious or egregious, allowing a defendant, especially a dominant competitor who has made use of the mark of a weaker

entity, to deduct profits due to its own market dominance in some circumstances inadequately serves the goal of deterrence. *See Truck Equipment Service Co. v. Fruehauf Corp.*, 536 F.2d 1210, 1222–23 (8th Cir.1976) (declining to allow an eighty percent deduction for profits attributable to strong consumer association with the mark of a well-known infringer that had copied the distinctive design of a competitor); *cf. W.E. Bassett,* 435 F.2d at 664 (ordering a full accounting of all profits where Revlon deliberately made use of the mark of a smaller competitor because such a remedy was "the only way the courts can fashion a strong enough deterrent"). As with ISCYRA's argument on damages, we cannot determine whether this case presents such a situation without further fact-finding by the district court as to the degree of bad faith, if any, displayed by Hilfiger. We therefore leave the issue for the district court to address on remand.

### C. Exclusion of Gursky's Testimony

 Finally, Hilfiger claims that it has been unfairly prejudiced by the district court's exclusion of testimony by its lead counsel. The decision whether to hear additional evidence on remand is within the sound discretion of the trial court judge. *Springs Mills, Inc. v. Ultracashmere House Ltd.*, 724 F.2d 352, 355 (2d Cir.1983). Our review of this case convinces us that no abuse of discretion occurred here.

On remand, Hilfiger sought to introduce Gursky's testimony to rebut any inference that Hilfiger had acted in bad faith by ignoring its counsel's advice. This testimony was rejected because Hilfiger's intent in using the Star Class mark was at issue in the first trial, and Hilfiger had ample opportunity at trial to develop a record and to present any evidence relevant to assessing whether its use of the mark was in good faith. Under these circumstances, the district court could reasonably conclude that the inability to supplement this record on remand would not result in undue prejudice to Hilfiger.

### III. CONCLUSION

For the reasons set forth above, we vacate the opinion of the district court, and remand for further proceedings consistent with this opinion.