20-1651-pr
*Dixon v. von Blanckensee*

# UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

August Term, 2020

Argued: March 12, 2021     Decided: April 12, 2021

Docket No. 20-1651-pr

MALE DIXON, AKA JAMES KING,

*Plaintiff - Appellee,*

— v. —

WARDEN BARBARA VON BLANCKENSEE, INDIVIDUALLY,

*Defendant - Appellant.*[*]

B e f o r e :

LYNCH and BIANCO, *Circuit Judges,* and HALPERN, *District Judge.*[**]

---

[*] The Clerk is respectfully directed to amend the official caption as shown above.

[**] Judge Philip M. Halpern, of the United States District Court for the Southern District of New York, sitting by designation.

Defendant-Appellant Warden Barbara von Blanckensee appeals from orders of the United States District Court for the Southern District of New York (Román, *J.*) granting in part and denying in part her motions to dismiss and reconsider dismissal of Plaintiff-Appellee James King's claims under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1999), seeking money damages for, inter alia, an alleged violation of his Fifth Amendment right to have meaningful access to the courts. We conclude that King does not state a plausible claim under the Fifth Amendment and that the district court thus erred in failing to grant qualified immunity to von Blanckensee on that claim. We therefore **REVERSE** the district court's orders to the extent they denied the motion to dismiss King's Fifth Amendment *Bivens* claim and **REMAND** to the district court with instructions to dismiss that claim.

———————

STEVEN J. KOCHEVAR, Assistant United States Attorney, *for* Audrey Strauss, United States Attorney for the Southern District of New York, New York, NY, *for Defendant - Appellant.*

DAVID C. RUSSELL (Kent A. Yalowitz, *on the brief*), Arnold & Porter Kaye Scholer LLP, New York, NY *for Plaintiff - Appellee.*

Samuel Weiss, Washington, D.C., *for Amicus Curiae Rights Behind Bars.*

———————

2

GERARD E. LYNCH, *Circuit Judge*:

This case stems from actions that allegedly occurred during a civil case that Plaintiff-Appellee James King[1] filed in the Court of Common Pleas of Luzerne County, Pennsylvania, in 2015. At the time of that filing, King was serving a sentence at the Federal Correctional Institution at Otisville, New York ("FCI Otisville"). King's complaint alleged that Pennsylvania state officials violated his rights by using excessive force during an arrest. In the course of proceedings in that case, a state court judge issued a "transport order" that purported to "authorize[]" officials at FCI Otisville to "release [King] into the temporary custody of the Sheriff of Luzerne County . . . for the purpose of attending a hearing scheduled for January 26, [2016]." J. App'x at 19. Warden Barbara von Blanckensee did not transport King to the hearing; instead, arrangements were made for King to appear telephonically. King's complaint was ultimately dismissed.

King, proceeding pro se, filed the instant action against von Blanckensee in her official and individual capacities asserting violations of his First, Fifth, Sixth,

---

[1] The name on King's birth certificate is "Male Dixon." He is generally known, however, as "James King." The parties and the district court so refer to him, as do we in this Opinion.

and Seventh Amendment rights stemming from her failure to transport him to his hearing and requesting money damages under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1999). Warden von Blanckensee moved to dismiss the complaint, and the United States District Court for the Southern District of New York (Nelson S. Román, *J.*) dismissed all of King's claims except for his First and Fifth Amendment claims. She then moved for reconsideration, and the district court dismissed King's First Amendment claim.[2]

Warden von Blanckensee appeals the district court's denial of qualified immunity as to King's Fifth Amendment claim against her. She argues that, as a matter of law, King has failed to allege a violation of a clearly established constitutional right and she is thus entitled to qualified immunity. We agree. Accordingly, we REVERSE the orders of the district court to the extent that they denied von Blanckensee's motion to dismiss King's Fifth Amendment *Bivens* claim and REMAND this case with instructions to dismiss that claim.

---

[2] Although the district court did not address von Blanckensee's qualified immunity defense in its order granting in part her motion to dismiss, it clarified that it had concluded that she was not entitled to qualified immunity on King's Fifth Amendment claim in its order granting in part her motion for reconsideration.

4

**BACKGROUND**

## I.    The State Court Proceedings and King's Federal Complaint

While incarcerated at FCI Otisville, King, acting pro se, filed a complaint in Pennsylvania state court alleging that Pennsylvania police officers used excessive force against him during the course of an arrest. The presiding state judge scheduled a pre-trial conference to be held on January 26, 2016 and issued a "transport order" stating in relevant part that:

> the Superintendent of FCI Otisville is hereby authorized to release into the temporary custody of the Sheriff of Luzerne County or his proper Deputies for the purpose of attending a hearing scheduled for January 26, [2016] at 1:00 p.m. at the Luzerne County Courthouse, 200 North River Street, Wilkes-Barre, Pennsylvania 18711 before the Honorable Tina Polachek Gartley.
> Defendant shall be housed at the Luzerne County Correctional Facility until further Order of this Court.

J. App'x at 19 (emphasis omitted).

King was not transported to that hearing. Instead, von Blanckensee (or other officials at the prison subordinate to her) arranged for him to appear telephonically. King's state-court complaint was ultimately dismissed as barred by the statute of limitations, for failure to state a claim, and for failure to effectuate service on the defendants.

5

On September 25, 2017, King filed the instant action in the Southern District of New York. King's Second Amended Complaint ("SAC"), filed February 5, 2018, asserts violations of his First, Fifth, Sixth, and Seventh Amendment rights stemming from von Blanckensee's failure to transport him to his hearing. He alleges that von Blanckensee "refused to obey a court order" that "directed her to deliver [him] to the court by allowing the local Sheriff to take custody and control of [him]." *Id.* at 16. King further alleges that "[t]here existed no legal reason for the defendant [to refuse] to permit [him] to attend the scheduled court proceeding." *Id.* "Consequently," King alleges, "the . . . lawsuit was dismissed due to the defendant's conduct." *Id.*

## II.    Proceedings in the District Court

On October 16, 2018, von Blanckensee moved to dismiss the SAC. She argued that any claims made against her in her official capacity were barred by sovereign immunity, that *Bivens* should not be extended to provide a cause of action for money damages against her in her personal capacity, that King failed to state any claim for relief, and that, in any event, she is protected by qualified immunity.

On June 11, 2019, the district court granted the motion in part and denied it in part. The district court held that King could not sue von Blanckensee in her official capacity, that § 1983 does not provide a remedy against a federal officer, and that King failed to allege a violation of his Sixth and Seventh Amendment rights. However, the court allowed King to proceed with his *Bivens* claim for violations of his First and Fifth Amendment rights.

In its order, the court construed King's pro se complaint liberally. It characterized King's complaint as alleging that "Defendant retaliated against [King] for filing a lawsuit by preventing him [from] attending his scheduled court proceedings" for no reason "other than retaliation, spite, and her desire to inflict punishment on him" in violation of King's First Amendment right to petition the government for redress. *Id.* at 50. Further, the "Complaint alleges that [King] was denied meaningful access to the courts" because of von Blanckensee's "unilateral[] and arbitrar[y]" decision not to comply with the state court transfer order in violation of King's Fifth Amendment right to due process. *Id.* at 39-41. Accepting those allegations as true, the district court held that King properly pleaded claims under the First and Fifth Amendments.

Warden von Blanckensee timely moved for reconsideration, arguing, inter

alia, that the district court failed to address qualified immunity in its order addressing the motion to dismiss. On June 18, 2019, the district court sua sponte directed the Clerk of Court to seek pro bono counsel to assist King in opposing the motion for reconsideration.

On October 7, 2019, King, through pro bono counsel, opposed the motion for reconsideration.[3] On March 26, 2020, the district court again granted the motion in part and denied it in part. First, the district court held that King failed to refute von Blanckensee's qualified immunity defense as to his First Amendment claim and granted the motion as to that claim. The district court, however, denied the defense as to King's Fifth Amendment claim because, in its view, King might be able to defeat the defense after eliciting further facts through discovery. This appeal followed.

## DISCUSSION

Warden von Blanckensee argues that King's allegations, taken as true, do not state a violation of his Fifth Amendment right to due process because federal

---

[3] David Russell and Kent Yalowitz of Arnold & Porter represented King in his opposition to the motion for reconsideration and continue to represent King pro bono before this Court. We are grateful for their vigorous representation of their client both here and in the court below.

officials do not need to abide by orders from a state court. Next, she contends that even if the acts alleged by King did violate the Constitution, the law was not clearly established at the time of that violation. Lastly, von Blanckensee argues that *Bivens* should not be extended to this context.[4]

## I.      Standards of Review

"We review a district court's denial of qualified immunity on a motion to dismiss de novo, 'accepting as true the material facts alleged in the complaint and drawing all reasonable inferences in plaintiffs' favor.'" *Garcia v. Does*, 779 F.3d 84, 91 (2d Cir. 2015), quoting *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir. 2001). Because King filed his complaint pro se, we construe it liberally. *See Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (describing the "special solicitude" that this Court affords to pro se litigants).

---

[4] We have jurisdiction over this interlocutory appeal because von Blanckensee argues that the district court's denial of her qualified immunity defense "turns on an issue of law." *Garcia v. Does*, 779 F.3d 84, 91 (2d Cir. 2015) (internal quotation marks omitted). Whether we have jurisdiction to review the *Bivens* question depends on whether the district court's recognition of the *Bivens* claim "directly implicate[s]" the qualified immunity defense. *See Wilkie v. Robbins*, 551 U.S. 537, 549 & n.4 (2007) (internal quotation marks omitted) (reasoning that where the recognition of a new *Bivens* cause of action implicates qualified immunity, a court may properly consider the issue on interlocutory appeal). Here, however, we need not decide that question because we rest our decision on qualified immunity grounds only and need not reach the *Bivens* issue.

## II. Qualified Immunity

"[Q]ualified immunity protects government officials from liability for civil damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *McGowan v. United States*, 825 F.3d 118, 124 (2d Cir. 2016) (internal quotation marks omitted). At the motion to dismiss stage, the qualified immunity defense "faces a formidable hurdle . . . and is usually not successful" because it is the *defendant* that must plead and prove the defense. *Estate of Chamberlain v. City of White Plains*, 960 F.3d 100, 111 (2d Cir. 2020), quoting *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 191-92 (2d Cir. 2006). However, "[i]f the complaint does not allege a cognizable federal claim, the defendant is entitled to have his qualified-immunity motion granted promptly as a matter of law." *Munafo v. Metro. Transp. Auth.*, 285 F.3d 201, 211 (2d Cir. 2002).

To determine whether King has alleged a cognizable claim we "accept as true, as we must, all well-pleaded factual allegations in the complaint." *Chamberlain*, 960 F.3d at 103 n.8. We need not consider "conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). However, "the complaint is deemed to include any written

10

instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted). When ruling on a Rule 12(b)(6) motion, we may also consider "matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

### A. Motion to Strike

As a preliminary matter, the parties disagree as to whether this Court may properly consider the state court hearing transcript and dismissal order in deciding whether King has alleged a plausible claim under the Fifth Amendment. The SAC explicitly references the transport order, which King attached to his complaint, and there is no doubt that we may consider that document as part of the record. *See Chambers*, 282 F.3d at 152 (attachments to a complaint are considered part of the complaint for the purposes of adjudicating a motion to dismiss).

King's complaint does not attach or otherwise explicitly reference the state court hearing transcript or the dismissal order. Instead, he simply alleges that von Blanckensee caused him "to miss a court appearance . . . resulting in the

11

dismissal of his" suit. J. App'x at 20.[5] The district court adjudicated the motion to dismiss and motion for reconsideration without referencing either the hearing transcript or the dismissal order. Nevertheless, von Blanckensee includes the hearing transcript and dismissal order in the Joint Appendix before this Court, and King has moved to strike those documents from the record. Warden von Blanckensee seeks notice of two facts supported by the documents. First, she asks us to take judicial notice of the fact that King appeared telephonically at the January 2016 hearing. Second, she seeks notice of the fact that the state court dismissal order "did not mention any defect in his appearance at the January 2016 hearing as a reason for dismissal or otherwise." Opp'n to Mot. to Strike at 10.

---

[5] It is worth noting, however, that while this allegation does not explicitly reference the order dismissing the suit, it asserts that King's failure to appear in person for the hearing caused the dismissal of his suit. But a plaintiff cannot allege a fact about a court proceeding and escape scrutiny of the record of that proceeding simply by neglecting to attach the record that documents what occurred there, any more than a party to a written contract can make assertions about the terms of the contract and preclude a court from considering on a motion to dismiss the undisputed document that embodies those terms. *See, e.g., Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (holding that if a complaint "relies heavily upon [a contract's] terms and effect" the contract may be considered at the 12(b)(6) stage even if the contract is not incorporated in or attached to the complaint).

This Court has discretion to determine whether to take judicial notice of documents that are not part of the record on appeal. *See, e.g., Young v. Selsky*, 41 F.3d 47, 50-51 (1994) (taking judicial notice of the plaintiff's submission of a defendant's prior testimony in other cases). Under Federal Rule of Evidence 201, a "court may judicially notice a fact that is not subject to reasonable dispute." Fed. R. Evid. 201(b). "Such facts must either be (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (internal quotation marks omitted).

King acknowledged to the district court that he was present at the hearing telephonically, and he does not dispute on appeal that he appeared at the hearing telephonically. Indeed, the state court transcript confirms that King so appeared, and the document is otherwise "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Id.* (internal quotation marks omitted). Thus, we may properly notice the hearing transcript for the fact that King appeared telephonically at the hearing.

We may also properly notice the fact – embodied in the state court

13

dismissal order – that King's action was dismissed because that court concluded that his § 1983 claims were barred by the statute of limitations, his personal injury claims failed to state a plausible claim for relief, and he failed to effectuate service on the defendants in the case. The order did not mention King's failure to appear in person as a reason for dismissing his claims. These are facts that "cannot reasonably be questioned" because they are apparent from the face of the state court order. *Id.*[6]

King further argues that absent "extraordinary circumstances" we should decline to consider matters that were not part of the record below, even if those matters are properly subject to judicial notice. King is correct that appellate courts will not ordinarily consider matters outside the district court record, and we have stated that "absent extraordinary circumstances, federal appellate courts will not consider rulings or evidence which are not part of the trial record." *Int'l Bus.*

---

[6] We do not take any position on whether King's state court action was properly dismissed, nor do we take judicial notice of any historical facts referenced in the state court order. *Cf. Int'l Star Class Yacht Racing Ass'n*, 146 F.3d at 70 ("Facts adjudicated in a prior case do not meet either test of indisputability contained in Rule 201(b): they are not usually common knowledge, nor are they derived from an unimpeachable source."). We take notice only of the indisputable fact that the state court dismissed King's claims on specified grounds and did not reference King's failure to appear in person as a factor bearing on its decision.

*Machines Corp. v. Edelstein*, 526 F.2d 37, 45 (2d Cir. 1975). However, we have recited that standard primarily in cases in which a party moves to supplement the record with new evidence that is *not* subject to judicial notice. *See, e.g., Bleichert v. N.Y. State Educ. Dep't*, 793 F. App'x 32, 35 (2d Cir. 2019) (discussing the extraordinary circumstances test regarding appellant's motion to supplement the record with 50 pages from a case file filled with factual matters that the district court did not review and which were not relevant to the holding). Moreover, we have *denied* motions to strike extra-record material that did not meet the "extraordinary circumstances" standard but of which we could otherwise take judicial notice. *See Okoi v. El Al Israel Airlines*, 378 F. App'x 9, 11 n.1 (2d Cir. 2010) (applying "extraordinary circumstances" test to grant motion to strike extra-record documents, but denying motion with respect to documents subject to judicial notice). And indeed, almost any circumstance in which an *appellate* court is asked to take judicial notice of a fact (as opposed to reviewing a district court's decision to take judicial notice) would likely be one in which the matter in question was not already part of the record below.

We need not undertake to formulate a "rule" about whether facts that may be judicially noticed are subject to or exempt from the "extraordinary

circumstances" test. Here, the basis for the dismissal of King's state court complaint is incontrovertibly demonstrated in the judicial record of that case, which flatly contradicts the assertion in King's complaint that the dismissal of the case was caused by his failure to appear in person at the hearing. We can (and do) give full weight to the principle that appellate courts will not *ordinarily* consider matters not part of the record below, and still recognize that the situation before us is sufficiently unusual that taking notice of the state court's actual ruling is consistent with that principle.

**B. Failure to Allege a Violation of King's Constitutional Rights**

Our qualified immunity analysis "is guided by two questions: first, whether the facts show that the [defendant's] conduct violated plaintiff['s] constitutional rights, and second, whether the right was clearly established at the time of the defendant['s] actions." *Golodner v. Berliner*, 770 F.3d 196, 201 (2d Cir. 2014) (internal quotation marks omitted). We may consider "these questions in either order" and "[i]f we answer either question in the negative, qualified immunity attaches." *Id*. We begin by deciding whether King has adequately alleged a claim under the Fifth Amendment. We hold that he has not.

King's complaint alleges that von Blanckensee "refused to honor or abide

16

by the [transport order], thereby causing [King] to miss a court appearance and resulting in the dismissal of his [suit]." J. App'x at 20. King further alleges that von Blanckensee's actions "deprived [him] of his right to pursue a Civil Rights lawsuit." *Id.* at 17. Finally, King contends that "[t]here existed no legal reason for the defendant Warden's refusal to permit [him] to attend the scheduled court proceeding, except for retaliation, spite, and a desire to inflict punishment on [him]" and to "frustrate and destroy [the] lawsuit." *Id*. at 16, 20.

The district court, reading King's complaint liberally, held that he adequately alleged that von Blanckensee "def[ied] the transport order, thereby denying Plaintiff meaningful access to the courts" in violation of the Fifth Amendment's right to due process. *Id*. at 69. The district court further reasoned that "absent any showing or proffered reason, a prison [official] cannot arbitrarily deprive an inmate of a right to appear for litigation that he has received pursuant to a court order." *Id*. at 49. Thus, the district court concluded that King plausibly alleged a violation of his constitutional rights and had satisfied the first element of the qualified immunity analysis.

On appeal, von Blanckensee argues that (1) "the Constitution does not require a federal warden to comply with a transport order issued by a state court

for a federal prisoner" and (2) even if it did, she "did not violate the state court order in this case" because the order did not mandate King's appearance but merely "authorized" it. Appellant's Br. at 15, 18. For his part, King argues that the relevant question we must answer is whether "federal officials [may] exercise their powers arbitrarily . . . impeding one's ability to litigate a suit" in violation of the Fifth Amendment right to due process. Appellee's Br. at 2. He defines the alleged violation as "not whether [von] Blanckensee should or should not have abided by the state court's order – it is that [von] Blanckensee *arbitrarily* refused the order." *Id.* at 12 (emphasis added). However the claimed right is defined, King did not plead a cognizable constitutional violation in this case.

### 1. State Court Authority

We begin by putting to one side the complaint's allegation that von Blanckensee defied the state court's order. Whether the order directed, or merely authorized, the Warden of FCI Otisville to release her prisoner to the custody of Pennsylvania state officials for transportation to a Pennsylvania state court, that order is a nullity that has no effect one way or the other on King's alleged right to attend the hearing. Warden von Blanckensee is correct that the Supremacy Clause renders a mandatory order from a state court to a federal officer void.

18

Thus, even assuming that the transport order issued a *directive* that von

Blanckensee refused to obey, she had no obligation to obey it.[7]

A principal tenet of the Supremacy Clause is that "the States have no

power . . . to retard, impede, burden, or in any manner control the operations of

the constitutional laws enacted by Congress." *McCulloch v. Maryland*, 17 U.S. (4

Wheat.) 316, 436 (1819). Indeed, federal law is the "supreme Law of the

Land," U.S. Const. art. VI, cl. 2., and "the Constitution guarantees 'the entire

independence of the General Government from any control by the respective

States,'" *Trump v. Vance*, 140 S. Ct. 2412, 2425 (2020), quoting *Farmers and*

*Mechanics Sav. Bank of Minneapolis v. Minnesota*, 232 U.S. 516, 521 (1914). That is

why courts "must not give effect to state laws that conflict with federal laws"

under the doctrine of preemption. *Armstrong v. Exceptional Child Ctr., Inc.*, 575

U.S. 320, 324 (2015).

But the Supremacy Clause goes beyond preemption of state laws. It is a

---

[7] Warden von Blanckensee argues that she did not violate the transport order because the order authorized, but did not direct, her to produce King. She therefore asks us to reject the complaint's allegation that she violated the order as "contradicted by the order itself." Appellant's Br. at 19. We need not resolve this dispute because, as explained in the text, the state court lacked the power to direct or authorize von Blanckensee to transport King to the hearing, and she had no obligation to comply with the order however it is characterized.

19

bedrock principle of our federalism, established even before the Civil War, that the supremacy of federal law renders state courts "without authority of law" to order the release of a federal prisoner, because "no State can authorize one of its judges or courts to exercise judicial power, by *habeas corpus* or otherwise, within the jurisdiction of another and independent Government." *Ableman v. Booth*, 62 U.S. (21 How.) 506, 514-16 (1858).[8]

That a state court has no authority to issue a *mandatory order* to the Bureau of Prisons ("BOP") to produce an inmate who is in federal custody does not mean that the BOP lacks discretion to release that inmate into state custody. BOP regulations provide that "[t]he Bureau of Prisons will consider a request made on behalf of a state or local court that an inmate be transferred to the physical custody of state or local agents pursuant to state writ of habeas corpus." 28 C.F.R. § 527.30. However, those regulations direct that "[t]he Warden shall authorize

_____

[8] The same is not true in reverse. Congress has authorized the federal courts to issue writs of habeas corpus to state officers, thus empowering federal courts "to inquire into the cause of [a prisoner's] commitment, and to discharge him, if he be restrained of his liberty in violation of the constitution" even when he "is held under the authority of a state." *Ex parte Royall*, 117 U.S. 241, 249 (1886). Indeed, a federal court may order a state authority to produce a person in custody even for a *hearing* on the writ. *See* 28 U.S.C. § 2243; *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 38-41 (1985) (discussing the writ of habeas corpus *ad testificandum*).

20

transfer only when satisfied that the inmate's appearance is necessary . . . and that federal interests . . . will not be interfered with, or harmed." *Id*. § 527.31(b).[9]

Here, King – a federal inmate – alleges that a Pennsylvania state court "directed" Warden von Blanckensee "to deliver [him] to . . . the local Sheriff" and that she "refused to honor or abide by the . . . [o]rder" causing him injury. J. App'x at 16, 20. But von Blanckensee had no obligation to obey that order. In fact, on appeal, King himself no longer "assert[s] that [von] Blanckensee had a . . . duty to obey the transport order[,]" and concedes that "a state court cannot exercise its judicial power over a federal official." Appellee's Br. at 22. Therefore, the district court erred to the extent that its orders allowed King to proceed on the theory "that [von Blanckensee] violated his constitutional Fifth Amendment due process rights by defying the transport order, thereby denying Plaintiff meaningful access to the courts." J. App'x at 69.

---

[9] Warden von Blanckensee's authority to exercise discretion to accommodate a prisoner's involvement in state proceedings thus derives from the federal regulations that govern her powers and duties as Warden of a Federal Correctional Institution. A state court has no power either to enhance or restrict her discretion to release a prisoner into state custody – though of course a state court may properly issue directives to state police or jail custodians to provide transportation or housing to a federal prisoner whose release to state custody has been approved by a warden in accordance with governing federal regulations.

21

*2. Access to the Courts*

Stripped of whatever rhetorical support the complaint may derive from the allegation that von Blanckensee defied a court order, King's argument resolves to a claim that, by declining King's request to be transported to Pennsylvania to attend the hearing, von Blanckensee deprived him of his constitutional right of access to the courts. But that claim must fail.

Incarcerated individuals have a right to *meaningful* access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996) (describing the right as "well-established"). However, "meaningful access to the courts is the touchstone . . . and the inmate therefore must go one step further and demonstrate that the alleged shortcomings . . . hindered his efforts to pursue a legal claim." *Id*. at 351 (internal quotation marks and citation omitted). Indeed, we have held that "[i]n order to establish a violation of a right of access to courts, a plaintiff must demonstrate that a defendant caused actual injury . . . *i.e.*, took or was responsible for actions that hindered a plaintiff's effort to pursue a legal claim." *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997) (internal quotation marks, citations, and alterations omitted).

King makes no plausible allegation that he was denied meaningful access

22

to the courts. He does not contend that von Blanckensee, or any other federal correctional official, prevented him from filing his state court action, or from filing whatever papers he wished in response to the motion made by defendants in that action to dismiss his complaint. To the extent that his complaint can be read to assert that von Blanckensee prevented him from participating in the scheduled state court hearing, King has abandoned that contention on appeal, and concedes the fact, incontrovertible in light of the undisputedly authentic state court transcript, that he was able to participate fully, albeit remotely, in that proceeding.[10]

Nor has King plausibly alleged that his appearance at the hearing by telephone rather than in person prejudiced him in any way. King alleges that his "lawsuit was dismissed due to [von Blanckensee's] conduct." J. App'x at 16. But that allegation is entirely conclusory, and may be disregarded on that ground alone. *See Rothstein*, 708 F.3d at 94. In any event, it is conclusively refuted by the state court's order of dismissal, which dismissed the case for reasons totally

---

[10] Indeed, it is clear from the transcript that the state court at no point showed any frustration with either the arrangement for telephonic participation or with King's absence, patiently heard and considered King's arguments, and rejected his perfunctory and conclusory objection to allowing the conference to continue without his physical presence.

23

unrelated to King's physical absence from the hearing. Other than that, King makes no concrete factual allegations creating a plausible inference that appearing telephonically deprived him in any way of *meaningful* access to the courts, or that his physical absence prejudiced him in any way. Thus, he has failed to "demonstrate that [the] defendant caused actual injury . . . or was responsible for actions that hindered [his] effort to pursue a legal claim." *Monsky*, 127 F.3d at 247 (internal quotation marks and citation omitted).

Nor can King get any mileage from his argument that his complaint sounds in a right to be free from arbitrary governmental action. *See* Appellee's Br. at 22 (arguing that his claim is not that von Blanckensee refused to comply with the state court order, but that she "*arbitrarily* refused [it], which violated [his] Fifth Amendment rights") (emphasis added). The district court appeared to rest its decision at least in part on this theory, as it held that "absent any showing or proffered reason, a prison [official] cannot arbitrarily deprive an inmate of a right to appear for litigation that he has received pursuant to a court order." J. App'x at 49; *see also id*. at 41 ("[King's] grievance is that the Warden unilaterally and arbitrarily decided not to honor a specific Court's transportation order . . . .").

As it relates to the alleged arbitrariness of von Blanckensee's actions,

24

King's complaint alleges that "[t]here existed no legal reason for the defendant Warden's refusal to permit [him] to attend the scheduled court proceeding, except for retaliation, spite, and a desire to inflict punishment on [him]" and to "frustrate and destroy [the] lawsuit." *Id*. at 16, 20. King's allegation that von Blanckensee refused to permit him to attend the hearing, however, is refuted by his own admission that he appeared at the hearing by telephone and by the transcript of the hearing. *See, e.g., Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146-47 (2d Cir. 2011) (holding that a court may look to documents attached to the complaint to determine whether an allegation should be "accepted as true"). It is simply not true that von Blanckensee "refus[ed] to permit [King] to attend the scheduled court proceeding." J. App'x at 16. The decision he challenges as "arbitrary" is the decision to permit him to appear by telephone rather than in person.

King does not, however, make any non-conclusory allegation permitting a plausible inference that von Blanckensee's decision was arbitrary. He acknowledges that someone "arranged the telephonic appearance," though he did not know "who arranged [it], or on what basis the decision was made." *Id.* at 28. But just because the decision to allow him to appear telephonically was not

25

explained to him does not mean that it was arbitrary. Nothing in the complaint indicates that other inmates were allowed to attend pre-trial hearings in state court civil actions while King was not.

Nor is there any basis for a contention that refusing a prisoner's request to appear in person at pre-trial, non-evidentiary proceedings is so arbitrary or irrational as to violate a prisoner's rights.[11] To the contrary, it is obvious that arranging for prisoners to be conveyed to state courts around the country would disrupt normal prison management and create potential security concerns. That is not to say that such concerns would necessarily justify prison officials in denying a prisoner's request to appear, with adequate security safeguards, where his physical presence is necessary to the adjudication of a civil case. But the federal regulation that explicitly permits a warden to "authorize transfer only when [among other things] satisfied that the inmate's appearance is necessary," 28 C.F.R. § 527.31(b), is plainly reasonable. It is equally reasonable for a warden

---

[11] When courts assess whether governmental decisions or classifications are arbitrary or unsupported by rational bases, "the burden is upon the challenging party to negative any reasonably conceivable state of facts that could provide a rational basis for the classification." *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001) (internal quotation marks omitted). Neither the allegations in King's complaint nor the arguments in his brief suggest that such a showing can be made.

to conclude that providing inmates with the ability to participate remotely in court proceedings like the preliminary conference at issue in this case is an adequate accommodation of prisoners' rights to pursue a case in light of the penological costs of transferring inmates out of federal custody for transportation across the country to attend, in person, every pre-trial conference or hearing whenever the inmate (or, for that matter, a state court judge) prefers that he be present.

At oral argument, counsel for King argued that, because the reason for von Blanckensee's decision does not appear on the record, there can be no penological basis for it, and it is therefore arbitrary. But that argument asks this Court, in effect, to rule that wardens must provide specific explanations of every decision to deny an inmate's request to attend a state court hearing in person. Indeed, counsel contended that to hold otherwise would mean that the warden need not consider any standard in making that decision.

But that is not so. The governing federal regulations provide standards for a warden to consider when determining, in her own discretion, whether to allow a federal inmate to be transferred to the custody of state or local agents for court proceedings: such a transfer may be approved provided that "the inmate's

appearance is necessary, that state and local arrangements are satisfactory, that the safety or other interests of the inmate . . . are not seriously jeopardized, and that federal interests . . . will not be interfered with, or harmed." 28 C.F.R. § 527.31(b). The standards in effect require the warden to balance the necessity for the inmate's in-person presence in court against the penological interests in avoiding unnecessarily disruptive and dangerous transportation of prisoners.

In view of the apparent reasons that militate against routine transportation of prisoners to distant courts, it is entirely reasonable under the federal regulations, and not at all arbitrary, for wardens to seek accommodations short of such transportation that would permit remote participation by prisoners in court proceedings where their physical presence is not necessary. As demonstrated by the transcript of the state court proceedings in this very case, such remote participation will often be entirely satisfactory. Both in his complaint and on appeal, King has eschewed any effort to explain why his physical presence at this hearing was vital, or even significantly advantageous, to his ability to pursue his lawsuit or to defend against the motion to dismiss.

We need not decide in this case under what, if any, circumstances a warden's decision not to permit an inmate to appear in person at a judicial

proceeding in a state court would deny the inmate's right to meaningful access to the courts. We express no view, for example, on whether a warden would violate that right if she refused to permit an inmate to attend a trial of an action in which he had no legal representation, was a vital trial witness, and was threatened with default if he did not appear in person, despite the availability of secure, judicially supervised custody arrangements for his transportation and housing. It suffices to note that such a case would be a far cry from the facts of this one.

In sum, Warden von Blanckensee had no obligation to comply with the transport order from the state court, and King's complaint does not plausibly allege that the decision to permit King to appear at the pre-trial conference only telephonically rather than in person was arbitrary, or in any way prejudicial to his case. Thus, King has failed to state a "cognizable federal claim, [and] the defendant is entitled to have [her] qualified-immunity motion granted promptly as a matter of law." *Munafo*, 285 F.3d at 211 (2d Cir. 2002). Given that King has failed to state a cognizable claim, it follows a fortiori that von Blanckensee did not violate a clearly established right, and we need not further address that issue. *Golodner*, 770 F.3d at 201. Furthermore, we need not decide, and do not opine on, whether *Bivens* should be extended to cover this type of claim.

## CONCLUSION

For the foregoing reasons, we REVERSE the district court's orders on von Blanckensee's motions to dismiss and reconsider dismissal to the extent that those motions were denied, and REMAND the matter to the district court with instructions to dismiss King's Fifth Amendment claim. It is further ORDERED that Plaintiff-Appellee's motion to strike is DENIED.